No. 94-034

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

EDWIN WARREN RILEY, a/k/a
"SMOKEY" RILEY,

        Defendant and Appellant.

FILED

APR 4 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twenty-First Judicial
District, In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John E. Smith, Attorney at Law,
Missoula, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
Micheal S. Wellenstein, Assistant Attorney
General, Helena, Montana

          George H. Corn, Ravalli County Attorney,
Hamilton, Montana

Submitted on Briefs: January 19, 1995

Decided: April 4, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Edwin W. Riley was charged in the District Court for the Twenty-First Judicial District in Ravalli County with incest, in violation of § 45-5-507, MCA. On June 28, 1993, after a trial by jury, Riley was found guilty of the crime charged. The District Court sentenced him to ten years in an appropriate state institution or community based correctional institution or program. Riley appeals his conviction. We affirm the judgment of the District Court.

We restate the issues on appeal as follows:

1. Did the District Court err when it allowed Bob Custer and Pat Richie to comment regarding their observations of the victim during their interview?

2. Was the District Court's admission of Custer's testimony regarding out-of-court statements by the victim prejudicial to the defendant?

3. Was Riley's conviction supported by sufficient evidence?

### FACTUAL BACKGROUND

On June 9, 1993, Riley was charged by amended information with incest, in violation of § 45-5-507, MCA. The issues raised by this charge and Riley's denial were the subject of a trial by jury on June 28, 1993. At trial, Bob Custer, a former social worker for the Montana Department of Family Services, Detective Pat Richie of the Ravalli County Sheriff's Department, the victim (Riley's

stepdaughter B.F.), and the victim's mother, Shirley Riley, all testified.

Custer testified that his office received a referral involving B.F. in February 1993, and that he interviewed her with Detective Richie present. He stated that he found B.F. to be "more mature than the average 16-year-old. Certainly more straightforward, almost blunt." At trial, Riley did not object to this testimony.

When Custer was asked who B.F. said assaulted her, Riley objected that the question called for inadmissible hearsay evidence. However, the court ruled that while Custer's reports were inadmissible, his testimony was not. Custer then stated that B.F. reported that her stepfather, Riley, touched her in inappropriate ways while at the family's mobile home outside of Hamilton.

Detective Richie testified that during her interview with B.F. she was very straightforward in her mannerisms and speech, but that she became angry and frustrated at times during the conversation. She also testified that during a subsequent interview, B.F. appeared to be a very straightforward young lady, but did not appear as outwardly angered. Riley did not object to these descriptions of B.F.'s demeanor, nor any other testimony from Richie.

B.F. testified that on Friday, February 12, while she and Riley were watching movies and her mother was asleep in the back bedroom, Riley "just started picking at me to annoy me and started

3

wrestling around with me, and then he grabbed my breast on the outside of the shirt, sometimes under, and I would tell him to leave me alone . . . ." B.F. testified that incidents like this happened more than once.

B.F. testified that on Saturday night of the same weekend she was in the kitchen washing dishes when Riley walked up behind her and cupped her breasts and asked her what she was doing. She stated that she told him she was washing the dishes and shrugged him away.

She testified that "[h]e would sometimes tell me to pull down my pants, and I would--and he would grab ahold of my pubic hairs and tell me you're getting a big bush on you, or he would look at my breasts and tell me I'm growing." B.F. testified that she tried to discourage this type of action.

B.F. testified that Riley sometimes wrestled with her and that she would get the feeling that he was aroused. B.F. testified that "[h]e would press his penis area up against my body and say, see what you can do to an old man whenever he would get hard." B.F. also stated that Riley would sometimes kiss her and that he would sometimes pull her blouse down.

B.F. told a school classmate, and later, a school counselor, about these incidents involving her stepfather, in February 1993. B.F. said she did not report any of this earlier because she was afraid that her mother would reject her and that no one would

4

believe her. B.F. also testified that she was afraid she would be taken out of her home.

B.F. stated that she talked with Custer and Richie about these allegations, and that after she talked to Custer, she was placed in a foster home.

B.F. admitted on cross-examination that she did not observe Riley achieve sexual climax during these incidents with her. However, B.F. again stated on redirect examination that, based on Riley's erection, she felt he had been sexually aroused.

## ISSUE 1

Did the District Court err when it allowed Bob Custer and Pat Richie to comment regarding their observations of the victim during their interview?

Riley contends that the District Court erred when it allowed testimony of the investigating social worker, Bob Custer, and the investigating officer, Pat Richie, which had the effect of bolstering B.F.'s credibility. The State points out, however, that no objection to either witness's testimony was made on that basis **at** the **time** of **trial.** A review of the record demonstrates that the State is correct. We have held that the failure to object constitutes a waiver of that objection pursuant to § 46-20-104, MCA, unless the circumstances come within an exception found at § **46-20-701,** MCA. *State v. Arlington* (1994), 265 Mont. 127, 158, 875 P.2d 307, 326.

Section 46-20-104(2), MCA, provides that:

Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. <u>Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)</u>.

(Emphasis added.)

There is no demonstration by Riley that any of the exceptions found at § 46-20-701(2), MCA, apply. Therefore, we hold that since Riley failed to raise these objections at trial, he is barred from raising them on appeal.

<u>ISSUE 2</u>

Was the District Court's admission of Custer's testimony regarding out-of-court statements by the victim prejudicial to the defendant?

The standard of review for evidentiary rulings is whether the district court abused its discretion. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citing *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054).

Riley claims that the testimony of Custer, which repeated B.F.'s allegations, was hearsay and should not have been admitted as a hearsay exception pursuant to Rule 803(8), M.R.Evid. Riley objected during trial to references to the recorded statements of B.F. The District Court held that Custer's reports themselves, not his testimony, were excluded under Rule 803(8), M.R.Evid., and allowed Custer to repeat what he was told by B.F. Riley contends

6

that based on Rule 803(8)(i), Custer's testimony which summarized his report was just as inadmissible as his report. We agree.

The State concedes that Custer's testimony regarding B.F.'s out-of-court statements was hearsay and should have been excluded by the District Court. However, the State argues that the admission of that testimony does not automatically entitle Riley to a reversal of his conviction. With this contention, we also agree.

We have held that "[a]n error by the trial court will be deemed harmless 'unless the record shows that the error was prejudicial.'" *State v. Bower* (1992), 254 Mont. 1, 5-6, 833 P.2d 1106, 1109 (citing § 46-20-701(1), MCA).

When we examine the prejudicial effect of an error, we will examine the totality of the circumstances in which the error occurred. *Bower*, 833 P.2d at 1109 (citing *Brodniak v. State* (1989), *239* Mont. 110, 115, 779 P.2d 71, 74).

The record discloses that Custer testified prior to B.F. and that B.F. was, in fact, cross-examined regarding her interview by Custer and Richie. We also note that Custer did not repeat any allegation to which B.F. did not herself testify in much greater detail, and that B.F. was subject to full cross-examination regarding all of her testimony.

In this case, after a review of the record, we cannot conclude that Custer's testimony was prejudicial to the defendant. It was brief and added nothing to the direct testimony of the victim. We

hold that the District Court's error when it admitted Custer's hearsay testimony was harmless.

<u>ISSUE 3</u>

Was Riley's conviction supported by sufficient evidence?

The standard of review for sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' *Arlington,* 875 P.2d at 318 (quoting *State v. Cyr* (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).

Riley was charged with the crime of felony incest. Section 45-5-507 (1), MCA, provides that:

> A person commits the offense of incest if he knowingly marries, cohabits with, has sexual intercourse with, <u>or has sexual contact as defined in 45-Z-101 with</u> an ancestor, a descendent, a brother or sister of the whole or halfblood, or any stepson <u>or stepdaughter</u>. The relationships referred to herein include blood relationships without regard to legitimacy, relationship of parent and child by adoption, and relationships involving a stepson or stepdaughter.

(Emphasis added.)

Section 45-2-101(60), MCA, defines sexual contact as "any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party." The District Court instructed the jury that sexual or intimate parts include the "genitalia, breasts, buttocks, hips, belly or chest of a girl."

8

In this case, B.F. testified that Riley touched intimate parts of her body, including her breasts and her pubic area. B.F. also testified that the defendant appeared to be aroused during these incidents.

Riley argues that there was not substantial evidence in the record to infer that he touched B.F. with intent to arouse or gratify his sexual desires. However, the record indicated otherwise. B.F. testified that "[h]e would press his penis area up against my body and say, see what you can do to an old man whenever he would get hard." Testimony of a more explicit or graphic nature was unnecessary.

We have held that "[i]ntent is a fact question for the jury, and it is well-settled that the jury may infer intent from defendant's acts." *State v. Kestner* (1986), 220 Mont. 41, 46, 713 P.2d 537, 540 (citing *State v. Jackson* (1979), 180 Mont. 195, 205, 589 P.2d 1009, 1015). Based upon the previous testimony, the jury could reasonably infer that Riley's acts were done for the purpose of sexual gratification.

We hold that there was sufficient evidence to support Riley's conviction for incest.

The judgment of the District Court is affirmed.

_____
                    J tice

9

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10