No. 97-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 162

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DOUGLAS VEIS

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks; Appellate Defender Office;

Helena, Montana


For Respondent:

Hon. Joseph P. Mazurek, Attorney General;

Jennifer M. Anders, Assistant Attorney General;

Helena, Montana


Dennis Paxinos, Yellowstone County Attorney;

Billings, Montana


Submitted on Briefs: April 30, 1998

Decided: June 25, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1 The defendant, Douglas Veis, was charged in the District Court for the Thirteenth Judicial District in Yellowstone County with four felony counts of sexual intercourse without consent. After a trial in which Veis objected to certain evidentiary offerings by the State, a jury convicted Veis of all four counts, and he received forty-year sentences for each offense. Veis appeals. We affirm the judgment of the District Court.**

No

¶2 There are two issues on appeal:

¶3 1. Did the District Court abuse its discretion when it admitted testimony from one of the victims regarding prior acts by Veis?

¶4 2. Did the District Court abuse its discretion when it admitted testimony from the victims' therapist regarding their references to their alleged abuser during therapy sessions?

## FACTUAL BACKGROUND

¶5 Douglas Veis and Tina Eckelman first met as coworkers in 1989 and dated for approximately six months. Eckelman has two sons, S.J. and B.J., currently ages fourteen and ten, respectively. After his relationship with Eckelman ended, Veis remained a family friend, and both boys knew him.

¶6 In the fall of 1995, Eckelman learned that S.J. was abusing B.J., and in response, she took both boys to a therapist, Ella Dugan-Laemmle. Dugan-Laemmle learned that both boys had been abused by a third person, although they initially refused to identify the individual. Soon thereafter, S.J. identified Veis as his abuser to both his mother and Dugan-Laemmle.

¶7 On November 1, 1995, the State filed an information and supporting affidavit that charged Veis with three felony counts of sexual intercourse without consent. It alleged that during 1993-1995, Veis twice had sexual intercourse with S.J., and once with B.J., in violation of § 45-5-503, MCA.

¶8 A trial was held in June 1996, but the jury was unable to reach a verdict, and a second trial was scheduled for August 1996. Prior to the second trial, the State amended the information to add a fourth felony count of sexual intercourse during the same period, based on another alleged incident with S.J.

¶9 During the second trial, Veis contended that he did not commit the acts and that another individual was responsible for the crimes against the boys. In support of that defense, he cross-examined S.J. about an anonymous note that S.J. had written and given to school officials in March 1995. The note stated that S.J.'s father had raped

him. After an investigation by school officials, they concluded that the note was a prank.

¶10 On the first morning of the trial, the State filed a motion in limine to exclude the note on the grounds that it was not relevant. The District Court denied the motion and ruled that it was relevant to the defense's theory, as well as to the witness's veracity. In response, the State sought to admit evidence of acts of abuse involving Veis and S.J. prior to those specifically alleged to have occurred in the summer of 1995. It contended that the prior acts should be admitted as res gestae, along with the therapist's testimony, to explain the note. After Veis referred to the note during his opening statement and then questioned S.J. about it during cross-examination, the District Court allowed the State in its redirect to ask S.J. about why he wrote the note. S.J. referred to other incidents with Veis prior to when he wrote the note and testified that he wrote the note in order to gain the courage and attention to tell someone about the abuse.

¶11 Later in the trial, Dugan-Laemmle testified about some of the methods that she used with the boys to relieve their anger during therapy, and she identified exhibits from the boys' exercises. They included: a letter that she instructed S.J. to write to his abuser; a list of names prepared by S.J. of people with whom he was angry and on which he had circled the name of the person with whom he was most angry; and a file folder with many marks on it made by B.J. when he stabbed it with a pen through a top piece of paper on which the name of B.J.'s abuser had been written. Dugan-Laemmle did not otherwise identify the individual who the boys told her had abused them.

¶12 At the conclusion of the four-day trial, a jury convicted Veis of all four counts. On January 2, 1997, the District Court entered its judgment and commitment in which it sentenced Veis to forty-year sentences for each conviction.

ISSUE 1

¶13 Did the District Court abuse its discretion when it admitted testimony from one of the victims regarding prior acts by Veis?

¶14 We review a district court's evidentiary decisions for an abuse of discretion. *See State v. Gregoroff* (Mont. 1997), 951 P.2d 578, 580, 54 St. Rep. 1469, 1470; *State v.*

*Widenhofer* (Mont. 1997), 950 P.2d 1383, 1387, 54 St. Rep. 1438, 1441.

¶15 The State sought to exclude evidence of the note written by S.J. When the District Court held that the note written by S.J. could be admitted by Veis to support his theory that another person had committed the abuse against the boys and to impeach S.J.'s credibility, the State moved to allow S.J. to testify regarding prior abuses by Veis in order to explain why he wrote the note. Veis objected to admission of the prior acts evidence on the basis that the State had failed to comply with the procedural requirements of *State v. Just* (1979), 184 Mont. 262, 612 P.2d 957. *See also State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52 (modifying the *Just* requirements). The State contended that the prior acts were not Rule 404(b) evidence and, therefore, that *Just* did not apply, and that Veis had had actual notice of the evidence for many months. It contended that the evidence was admissible based on principles of res gestae and necessary to explain the note. The District Court eventually allowed S.J. to testify about why he wrote the note and to refer to prior abuse by Veis that was not charged in the case after Veis referred to the note in his opening statement and cross-examined S.J. about it.

¶16 Veis bases his appeal on the assumption that the evidence of other acts violates Rule 404(b), M.R.Evid., which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

He contends that res gestae, as relied on by the State in the District Court, was an improper basis for admission of the other acts testimony, and that if the evidence is not admissible pursuant to a res gestae theory, it is not admissible at all. The State concedes on appeal that res gestate is not applicable, but asserts that the testimony was nonetheless admissible for rebuttal purposes. The District Court did not state the reasons for its admission of the other acts testimony. The State contended at trial that res gestae justified the admission and, as such, Veis contends that the District Court relied on the State's position as the basis of its decision. Regardless of the District Court's reasons for its decision, we will not reverse the decision if it reaches the right result, even if for the wrong reason. *See State v. Huether* (Mont. 1997), 943 P.2d 1291, 1294, 54 St. Rep. 872,

874; *State v. Arthun* (1995), 274 Mont. 82, 87, 906 P.2d 216, 219.

¶17 We agree with the State that S.J.'s testimony regarding the other acts did not violate Rule 404(b), M.R.Evid. The record shows that the District Court allowed the evidence to explain the note, and only after Veis had opened the door by using the note to impeach S.J. As such, it was not offered for the purpose prohibited by Rule 404, M.R.Evid., and the *Just* requirements did not apply.

¶18 We have held that once a party opens the door regarding certain evidence, the opposing party has the right to offer evidence in rebuttal, including evidence of other acts. *See State v. McQuiston* (1996), 277 Mont. 397, 403, 922 P.2d 519, 523; *Cline v. Durden* (1990), 246 Mont. 154, 161, 803 P.2d 1077, 1081; *see also* Rule 611(d), M.R. Evid. Veis cross-examined S.J. regarding the note to challenge his credibility as well as the State's allegation that Veis was the abuser. The State was therefore entitled to rehabilitate S.J.'s credibility, as the State attempted to do when it had S.J. explain what motivated him to write the admittedly false note.

¶19 A district court has wide discretion in determining the scope and extent of reexamination regarding matters brought out on cross-examination. *See State v. Shaw* (1993), 255 Mont. 298, 302-03, 843 P.2d 316, 319; *Cline*, 246 Mont. at 161, 803 P.2d at 1081. S.J.'s reference on redirect to the other acts was clearly relevant in light of Veis's cross-examination. Moreover, S.J.'s explanation was supported by expert testimony regarding the behavior of abused children and their tendency to draw attention to themselves in order to disclose the harm being done to them and to transfer the blame to someone (e.g., a parent) who will not actually harm them. Finally, S.J.'s testimony regarding the other acts was very limited and was not unfairly prejudicial. Accordingly, we conclude that the District Court did not abuse its discretion when it allowed S.J. to testify regarding the other acts during the State's redirect examination.

ISSUE 2

¶20 Did the District Court abuse its discretion when it admitted testimony from the victims' therapist regarding their references to their alleged abuser during therapy sessions?

¶21 At trial, Veis contended for a variety of reasons that Dugan-Laemmle should not

have been allowed to testify. He limits his argument on appeal to the assertion that the District Court erred when it permitted Dugan-Laemmle to relate hearsay statements from the boys' therapy sessions, and in doing so, allowed her to testify regarding the ultimate issue; i.e., to identify Veis as the abuser. The State, on the other hand, contends that Dugan-Laemmle's testimony was not hearsay, nor did it identify Veis. The District Court permitted the testimony on the basis that it was not hearsay, finding instead that the testimony consisted of prior consistent statements from the boys which became admissible after their credibility had been challenged, and that to the extent that it may have been hearsay, the testimony came within the present state of mind exception.

¶22 Rule 801(c), M.R.Evid., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

¶23 Dugan-Laemmle's testimony about whom the boys directed their anger toward served to identify Veis based on the boys' out-of-court statements. As such, we conclude that her testimony that referred to the actual content of the letter, the list, and the folder produced during therapy sessions, and which identified Veis, whether expressly or impliedly, was hearsay evidence.

¶24 We recognize that a statement is not hearsay pursuant to Rule 801(d)(1)(B), M.R. Evid., if it is a prior consistent statement offered in response to a challenge to the declarant's credibility. However, in order for a statement to be admissible as a prior consistent statement pursuant to Rule 801(d)(1)(B), M.R.Evid., it must, among other things, have been made before the declarant had a motive to fabricate. *See Tome v. United States* (1995), 513 U.S. 150, 167, 115 S. Ct. 696, 705, 130 L. Ed. 2d 574, 588; *State v. Lunstad* (1993), 259 Mont. 512, 517, 857 P.2d 723, 726. Here, based on Veis's theory of defense, S.J.'s motive to fabricate his accusations about Veis existed prior to the time that he revealed during therapy to Dugan-Laemmle that Veis was his abuser. Accordingly, testimony from Dugan-Laemmle regarding who S.J. identified during the exercises constitutes hearsay that is not admissible as a prior consistent statement.

¶25 While we recognize that the District Court erred when it permitted Dugan-Laemmle to give hearsay testimony about who the boys identified in the exhibits produced during therapy, we will not reverse Veis's conviction on that basis alone.

Rather, where hearsay testimony has been erroneously admitted, the defendant must have suffered prejudice as a result of the error to be entitled to have his conviction reversed. *See State v. Stuit* (1996), 277 Mont. 227, 232, 921 P.2d 866, 869; *State v. Riley* (1995), 270 Mont. 436, 440, 893 P.2d 310, 313.

¶26 We have held that a defendant is not prejudiced by hearsay testimony when the statements that form the subject of the inadmissible hearsay are admitted elsewhere through the direct testimony of the "out-of-court" declarant or by some other direct evidence. *See Stuit*, 277 Mont. at 232, 921 P.2d at 869; *State v. Graves* (1995), 272 Mont. 451, 460, 901 P.2d 549, 555; *Riley*, 270 Mont. at 440, 893 P.2d at 313. Our holdings reflect the fact that when a defendant has the opportunity to cross-examine a declarant because he or she is present at trial and testifies, the dangers that the hearsay rule seeks to avoid are not present and, therefore, hearsay regarding the declarant's out-of-court statement that is admitted during another witness's testimony is harmless. *See State v. Canon* (1984), 212 Mont. 157, 164, 687 P.2d 705, 709 (concluding that the testimony was not hearsay, but stating that even if it had been, there would have been no prejudice because "the defendant had all of the necessary opportunity to protect himself by cross-examination of [the declarant].").

¶27 The facts in *Stuit* are similar to the facts here. There, the defendant appealed the District Court's admission of hearsay testimony from an officer regarding the defendant's identity. The officer's knowledge was based on statements made to him by an eye-witness to the alleged offense who also testified at trial about the events and the defendant's identity. We held that "[t]he officer's testimony as to the identity of the shooter after [the declarant's] testimony was merely cumulative and thus harmless." *Stuit*, 277 Mont. at 233, 921 P.2d at 870.

¶28 Here, in the District Court trial both of the boys testified prior to Dugan-Laemmle's testimony. Each of them identified Veis as their abuser. In addition, S.J. identified the letter and list of names that he had written during his therapy and described both the directions he had been given by Dugan-Laemmle when asked to write them and the content of his writings. He testified that in both the letter and the list he explicitly identified Veis as his abuser. Veis had full opportunity to cross-examine both boys. At no point during his cross-examination of S.J. or B.J. did Veis challenge the boys' identification of Veis as their abuser. Accordingly, Dugan-Laemmle's hearsay testimony about the boys' identification of their abuser during therapy was simply cumulative of the boys' own testimony and did not deny Veis the

**opportunity to confront his accusers.**

**¶29 For these reasons, we affirm the judgment of the District Court.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.