No. 05-224

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 29

MITCH PALMER,

        Plaintiff and Appellant,

   v.

ERNEST E. BAHM,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County Yellowstone, Cause No. DV 2004-0510,
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jeffrey Simkovic, Simkovic Law Firm, Billings, Montana

        For Respondent:

        David Dietrich and Scott Hagen, Dietrich & Associates,
Billings, Montana

Submitted on Briefs:  January 4, 2006

Decided:  February 7, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Mitch Palmer (Palmer) contracted to purchase a parcel of real property from Ernest Bahm (Bahm) pursuant to a buy-sell agreement. Bahm sold a small piece of that parcel to Teresa Punt (Punt) pursuant to an option contract with Punt. Palmer sued Bahm alleging that Bahm breached the buy-sell agreement and the implied covenant of good faith and fair dealing when he allowed Punt to exercise her option. The District Court granted summary judgment in favor of Bahm. Palmer now appeals. We affirm.

¶2 We reframe the issues presented for review as follows:

¶3 (1) Whether Palmer has standing to enforce compliance with specific provisions of the 2001 Bahm-Punt contract;

¶4 (2) whether Palmer has standing to challenge the contract and transfer between Bahm and Punt by asserting the statute of frauds;

¶5 (3) whether Bahm breached the Bahm-Palmer buy-sell agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Bahm once owned two adjoining parcels of land in Yellowstone County. In 2004 Palmer contracted with Bahm to purchase one of these parcels (Tract 8). In 2001 Bahm had sold the other parcel[1] (Tract 7A) to Punt and her then-husband David (collectively, the Punts) pursuant to a buy-sell agreement. An addendum to that buy-sell agreement specified four "Additional Land Purchases," one of which was a "[p]arcel of land east of

---

[1]Tract 7A lies immediately west of Tract 8.

[Tract 7A] to include stucco fence (approx. 15') then north approx. 250' (to the end of the adjacent pens) for the additional $1200.00." The addendum imposed the condition that "[a]ll first right to purchase options must be exercised within 72 hours of another acceptable offer. This exercise shall be in the form of an accepted Buy/Sell and deposited earnest money toward that transaction." Palmer was not a party to the buy-sell agreement between Bahm and the Punts.

¶7     On March 9, 2004, Palmer made a written offer to Bahm to purchase Tract 8. Bahm rejected Palmer's offer by modifying certain terms and submitted a signed counter-offer to Palmer on March 12, 2004. Among the modifications, Bahm indicated that:

> Theresa Punt has 1st right to purchase all or portions of this property—She has expressed a willingness to purchase approximately a section 15' x 250' along the So/East boarder [sic] of her property—this would be accomplished by a boundary adjustment. This offer is contingent on Theresa Punt's decision within 72 hrs of this signing—to purchase portions of this property. Closing date to coincide w/ Theresa Punt's closing . . . .

Still on March 12, 2004, Palmer initialed the changes made by Bahm, indicating his assent and forming a contract for the purchase of Tract 8 between Bahm and Palmer. Cheryl Wing (Wing), a real estate broker, assisted Palmer in this transaction and presented the offer to Bahm and his counter-offer to Palmer.

¶8     According to Wing's deposition testimony, she spoke with Punt on March 9, 2004, and informed her of the pending offer, at which time Punt indicated her desire to purchase the fifteen foot by two-hundred-fifty foot strip of Tract 8 but equivocated as to whether she also wished to purchase some larger portion of Tract 8. Wing testified that she spoke with Punt the following day, however, at which time Punt indicated that she

3

wished to purchase only the fifteen foot by two-hundred-fifty foot strip. Wing further testified that on March 12, 2004, she and Palmer "went over in detail Teresa Punt's desire to have the 15 by 250 but nothing else and that we would get that cleared off. . . . [I]t was verified and reverified." According to Teresa Punt's affidavit, on March 10, 2004, she "unequivocally told [Wing] that I was exercising my option on the 15' x 250' strip of land." Wing testified that she attempted to call Punt after Palmer and Bahm signed the buy-sell agreement on March 12, but was unable to reach her until March 16, 2004. According to Wing, Punt then reiterated her desire to purchase the strip of land and made an appointment to meet with Wing a couple of days later. On March 18, 2004, Punt and Bahm both signed a buy-sell agreement whereby Punt purchased the fifteen foot by two-hundred-fifty foot strip of Tract 8, which adjoins Tract 7A and is enclosed by the stucco fence that encircles Punt's back yard. Bahm transferred this parcel to Punt via quitclaim deed on April 9, 2004.

¶9 According to his deposition testimony, Palmer met Punt on March 21, 2004, and asked her whether she had exercised her option. He testified that Punt responded, "I haven't yet, but I'm going to." Punt and Bahm had already entered into a buy-sell agreement three days earlier; thus, her statement indicates simply that she had not yet taken title to the property.

¶10 Palmer sued Bahm, alleging breaches of contract and of the covenant of good faith and fair dealing and seeking specific performance and punitive damages. Both parties moved for summary judgment. The District Court granted summary judgment in favor of

4

Bahm. The court determined that the only possible fact question—whether Punt validly decided to exercise her option—is uncontroverted, as Punt definitively communicated on March 10, 2004, her decision to purchase the contested strip of land. The court concluded that neither the statute of frauds nor the Bahm-Palmer agreement required Punt's *decision* to exercise her option to be in writing. Consequently, Punt validly exercised her option and Bahm breached neither his contract with Palmer nor the covenant of good faith and fair dealing when he declined to sell to Palmer the strip of land that Punt had validly purchased.

## STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment *de novo*. *Kullick v. Skyline Homeowners Assoc.*, 2003 MT 137, ¶ 13, 316 Mont. 146, ¶ 13, 69 P.3d 225, ¶ 13. Pursuant to Rule 56, M.R.Civ.P., the moving party must establish the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Once the moving party has met this burden, the opposing party must present substantial evidence essential to an element of its case in order to raise a genuine issue of material fact. We review a question of law to determine whether the district court's legal conclusions are correct. *Kullick*, ¶ 13.

## DISCUSSION

*Issue 1: Whether Palmer may bring a claim against Bahm for breach of a contract to which Palmer was not a party.*

5

¶12    Palmer argues that Punt failed to properly exercise her option to purchase the contested strip of property by signing a buy-sell agreement and depositing earnest money within seventy-two hours of Bahm's acceptance of Palmer's offer, pursuant to the terms of her contract with Bahm. Bahm asserts that Palmer may not enforce the specific terms of the 2001 Bahm-Punt agreement because he was not a party to that contract, nor was he an intended third-party beneficiary of that contract. We agree with Bahm that Palmer lacks standing to compel compliance with the terms of the 2001 contract between Bahm and Punt.

¶13    The contractual provisions that Palmer now seeks to enforce exist only in the 2001 contract between Bahm and Punt. The Bahm-Palmer buy-sell agreement, in contrast, states that the "offer is contingent on Theresa Punt's *decision* within 72 [hours] of this signing," (emphasis added) to purchase some portion of Tract 8. Generally, unless he is an intended third-party beneficiary of the contract, a stranger to a contract lacks standing to bring an action for breach of that contract. *See Ludwig v. Spoklie* (1996), 280 Mont. 315, 318-20, 930 P.2d 56, 58-59 (holding that strangers to a contract who are not intended third-party beneficiaries of the contract lack standing to bring an action based on an alleged violation of that contract); *see also* 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at 5 (4th ed. 2000) (noting that, with the exception of third-party beneficiaries, "courts recite talismanically . . . that 'strangers to a contract' have no rights under the contract"). Palmer's conversation with Punt on March 21, 2004, does not create a genuine issue of material fact: uncontroverted evidence

6

establishes that Punt had made her decision to purchase the strip well before that date. Palmer does not suggest that Punt had not made a decision within seventy-two hours of his signing the buy-sell agreement on March 12, 2004; rather, he argues that her decision was not in writing nor accompanied by earnest money. Thus, Palmer seeks to enforce specific provisions of the 2001 Bahm-Punt agreement. Palmer, however, was not a party to that contract. Moreover, Palmer does not even propose that he is an intended third-party beneficiary thereof. Therefore, Palmer lacks standing to enforce strict compliance with specific provisions of the Bahm-Punt agreement.

¶14    Contracts promote efficient transactions by encouraging predictable behavior in contracting parties and hence reliance on promises. Contractual principles such as substituted performance recognize that the parties to a contract may discretionarily accept imperfect performance, effectively altering contractual terms with the parties' mutual assent. *See* Restatement (Second) Contracts § 278 (1981). Allowing strangers to a contract to compel strict compliance with contractual provisions despite the parties' mutual satisfaction with imperfect performance would eliminate this flexibility, remove the parties' discretion to determine what constitutes suitable performance, and ultimately undermine the transactional efficiency that contracts promote.

*Issue 2: Whether Palmer has standing to challenge the contract and transfer between Bahm and Punt by asserting the statute of frauds.*

¶15    Palmer contends that the District Court failed to apply the statute of frauds and thus erroneously accepted Punt's oral expression of her decision to purchase the strip of

7

land as a valid exercise of her first right to purchase. Bahm maintains that the transaction satisfied the statute of frauds because it was memorialized in a written buy-sell agreement and the transfer was accomplished by a written quitclaim deed. Both parties overlook the determinative factor: Palmer lacks standing to assert that the grant to Punt from Bahm violates the statute of frauds.

¶16 Standing is a "threshold requirement of every case . . . ." *Matter of Paternity of Vainio* (1997), 284 Mont. 229, 235, 943 P.2d 1282, 1286. This Court may raise a party's lack of standing *sua sponte*. *In re Parenting of D.A.H.*, 2005 MT 68, ¶ 7, 326 Mont. 296, ¶ 7, 109 P.3d 247, ¶ 7; *Armstrong v. State*, 1999 MT 261, ¶ 4, 296 Mont. 361, ¶ 4, 989 P.2d 364, ¶ 4. Thus, we consider whether Palmer lacks standing to challenge the Bahm-Punt contract for violating the statute of frauds.

¶17 The statute of frauds, § 70-20-101, MCA, declares that a grant of an interest in real property that endures for more than one year must be accomplished by a written conveyance. Palmer seeks to invalidate the transfer between Punt and Bahm for violating the statute of frauds. Thus, his argument necessarily pertains only to the transfer of the strip of land and the associated agreement between Bahm and Punt. If "'strangers to a contract' have *no rights* under the contract," 13 Williston, § 37.1, at 5 (emphasis added), then a stranger to a contract lacks standing to enforce compliance with the statute of frauds. *See also Vincent v. Seaman* (N.Y. App. Div. 1989), 544 N.Y.S.2d 225 (holding that a stranger to a contract may not assert the statute of frauds to defeat the contract); *Scott v. Ranch Roy-L, Inc.* (Mo. Ct. App. 2005), __ S.W.3d __, 2005 WL 3286661, *5

("[p]laintiffs cannot challenge the validity of that assignment on the basis that it violated the Statute of Frauds because they were not parties to the assignment"); *Madera Production Co. v. Atlantic Richfield Co.* (Tx. Ct. App. 2003), 107 S.W.3d 652, 662 ("a stranger to the [agreement] . . . would not have standing to challenge the agreement on the statute of frauds ground"); *Lamereaux v. Pague* (Wash. Ct. App. 1973), 513 P.2d 1053, 1055 (holding that the statute of frauds is a personal defense that cannot be availed of by a third person); Restatement (Second) Contracts § 144 (1981) ("[o]nly a party to a contract or a transferee or successor of a party to the contract can assert that the contract is unenforceable under the Statute of Frauds"); *but cf. Sun Valley Iowa Lake Ass'n v. Anderson* (Iowa 1996), 551 N.W.2d 621, 630-31 (holding that a stranger to an oral contract has standing to assert the statute of frauds if he had previously received all of the interest in the real estate purportedly transferred by that oral contract, which previously belonged to the party to that oral contract). As a stranger to the 2001 Bahm-Punt contract, Palmer lacks standing to assert that it is unenforceable under the statute of frauds.

***Issue 3: Whether Bahm breached the Bahm-Palmer buy-sell agreement.***

¶18    Having established that Palmer may not sue to enforce compliance with the terms of the Bahm-Punt agreement or the statute of frauds, we now look to the Bahm-Palmer buy-sell agreement in order to determine whether Bahm breached its terms when he sold the strip of land to Punt. We conclude that Bahm complied with the essential terms of that contract.

9

¶19 The Bahm-Palmer buy-sell agreement requires merely that Punt make a decision whether to purchase the strip of land, or some other portion of Tract 8, within seventy-two hours of its signing by Bahm and Palmer. The Bahm-Palmer buy-sell agreement did not require Bahm and Punt to complete the transaction and transfer, nor to enter into a written buy-sell agreement within seventy-two hours. It merely required that Punt make a decision whether to exercise her option within seventy-two hours—by March 15, 2004. Uncontroverted evidence establishes that Teresa Punt told Cheryl Wing of her decision to purchase the strip of land on March 10, 2004. This decision was communicated to both Palmer and Bahm. Punt made her decision within a day of Palmer's initial offer to Bahm. Her decision preceded the signing of the Bahm-Palmer buy-sell agreement. Nevertheless, it happened "within 72 [hours]" of the signing, before March 15, 2004, and complied with the Bahm-Palmer buy-sell agreement. The District Court correctly determined that Bahm did not breach either his contract with Palmer, or the covenant of good faith and fair dealing.

¶20 Uncontroverted evidence establishes that Punt decided to purchase the strip of real property before March 15, 2004, and within seventy-two hours of Palmer's signing the Bahm-Palmer agreement. Her timely decision satisfied the specific provision of that contract pertaining to Punt's option. Thus, Bahm has established the absence of any genuine issue of material fact. Palmer lacks standing to enforce the provisions of the 2001 Bahm-Punt agreement. We will not reverse the District Court when it reaches the right result, even if for the wrong reason. *State v. Veis*, 1998 MT 162, ¶ 16, 289 Mont.

10

450, ¶ 16, 962 P.2d 1153, ¶ 16. Therefore, the District Court correctly determined that Bahm was entitled to judgment as a matter of law.

¶21     We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS