2008 VT 16

## William Bischoff, David Bischoff and Peter Bischoff v. Donald L. Bletz, Sr., Bruce Van Guilder and Rodney White

[949 A.2d 420]

No. 07-001

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 8, 2008

*Robert P. McClallen* of *McClallen & Bloomer, P.C.*, Rutland, for Plaintiffs-Appellees.

*Andrew M. Carter* of *Meub Associates, Inc.*, Rutland, for Defendant-Appellant White.

*John J. Welch, Jr.*, Rutland, for Defendant-Appellee Bletz.

*Charles D. Hickey*, St. Johnsbury, for Defendant-Appellee Van Guilder.

¶ 1. **Johnson, J.** From the perspective of appellant Rodney White, these proceedings must seem Kafkaesque. Donald Bletz, Sr. and Bruce Van Guilder ("defendants") appear to have repeatedly ignored his deeded right of first refusal while plaintiffs were somehow able to extinguish it despite the fact that they raised no claim against White in their complaint, they were not parties to his deed, and they had constructive notice, if not actual notice, of White's superior right before exercising their own purported "first option to buy" the subject properties. As discussed below, we vacate the trial court's summary-judgment decision that declared White's right of first refusal null and void, and remand for additional proceedings.

¶ 2. The record indicates the following. In 1978, White acquired a deeded right of first refusal in land owned by defendants' predecessors in interest, Robert and Joan Van Guilder. The parties agreed that upon receipt of a bona fide offer for the subject properties (a large parcel and a smaller parcel), the Van Guilders would give White written notice of the offer and its terms. White would then have twenty days to exercise his right of first refusal by filing written notice with the town clerk's office and providing a copy of such notice to the Van Guilders. Closing would occur within sixty days of the date that White accepted the offer. The agreement stated that if White did not file "written acceptance of such offer on the same terms and conditions as the original bona fide offer" with the town clerk within the required time period, the right of first refusal would "be deemed to be null and void" and it would "be considered automatically extinguished."

¶ 3. In 2003, with no apparent notice to White, Donald Bletz, Sr., Gordon Van Guilder, and the Estate of Van Guilder agreed to sell the subject properties to Bischoff Development Company. In March 2005, these contracts were superseded by two option contracts between defendants and plaintiffs. Plaintiffs paid defendant Bletz $1266.16 for "the first option" to purchase the smaller lot, and the parties agreed that if the option were exercised, the option payments would be credited toward the $31,000 purchase price. By its terms, the option expired on May 31, 2005, although it could be extended until March 26, 2006 if written notice were provided and additional consideration payments were made.

¶ 4. Plaintiffs paid defendants $8739.84 as consideration for the "first option to buy" the larger lot, and the parties agreed that all consideration payments would be credited toward the $215,000 purchase price if the option was exercised. This option similarly expired on May 31, 2005, although it could be extended until March 26, 2006 with written notice and additional consideration payments. Both agreements provided that if the options were not exercised within the time and manner specified, they would automatically expire and no longer be of any force or effect.

¶ 5. One year later, defendants provided White with written notice of these transactions, characterizing them as "bona fide offers," rather than options to buy. White's attorney responded that the options imposed no obligation to buy on plaintiffs, and in fact, the options had already expired by their own terms. Even aside from this, the attorney noted, defendants' purported notice

did not include all of the terms and conditions of any proposed sale. Under these circumstances, the attorney asserted, it was unnecessary for White to respond, although White did file a "Notice of Right of First Refusal" in the town clerk's office at the end of March 2006.

¶ 6. On April 7, 2006, plaintiffs notified defendants that they were exercising their options under the March 2005 agreements as modified by an "Extension of Option Agreement."[*] Defendants relayed these offers to White on April 11, and included two purchase and sale agreements signed by plaintiffs but not defendants. The agreement for the smaller lot indicated a purchase price of $31,000, with $3798.48 to be applied to the purchase price at closing (the same amount as the consideration paid for the option and two extensions), and a balance of $27,201.52 to be paid at closing. The purchase price for the larger lot was $215,000, which reflected a $26,219.52 payment to be applied to the purchase price at closing (the same value as the consideration paid for the option and two extensions), and a balance of $188,780.48 to be paid at closing.

¶ 7. On April 20, White's attorney sought immediate clarification from defendants regarding the actual purchase price for these lots given that plaintiffs appeared to be receiving credit at closing for their option payments. It does not appear that defendants responded to this request. On April 28, White provided written notice that he intended to exercise his right of first refusal and he agreed to pay identical terms for both parcels, subject to confirmation of the specific terms of the offer and the actual amount of consideration that would be due from plaintiffs at closing.

¶ 8. Defendants apparently intended to go forward with the sale to White, but before any closing could occur, plaintiffs filed a complaint against defendants, raising claims of breach of contract, breach of warranty, misrepresentation, and negligence. Plaintiffs asserted that defendants were prepared to convey the subject properties to White, and they believed that White should not be allowed to purchase this property because he had not agreed to pay the same price as plaintiffs. Plaintiffs did not name White as a defendant, nor did they raise any claims against him. Instead, plaintiffs sought $129,800 in compensatory damages from defend-

---

[*] Plaintiffs did not include a copy of this "extension agreement" with their complaint, and it does not appear to be in the record.

ants for sums expended in reliance upon defendants' representations, an order restraining and enjoining defendants from conveying the properties to White, and "such other relief as is just." They did not seek specific performance of their option contracts with defendants.

¶ 9. Several days later, the court granted plaintiffs' requests for an ex parte temporary restraining order (TRO) and an ex parte writ of attachment. The court later granted plaintiffs' request to convert the TRO into a preliminary injunction, finding that no party would be prejudiced by its issuance and it would preserve the status quo pending service of the pleadings on White and completion of the case. Shortly thereafter, White's real-estate attorney wrote to defendants, indicating his understanding that there was a preliminary injunction in place until further order of the court that prevented defendants from selling the property to White. The attorney reiterated White's readiness and willingness to purchase the property upon identical terms as those offered by plaintiffs, noting that White had arranged financing and the funds were available via wire transfer upon two days' notice after all parties were ready to close.

¶ 10. In late June, White was joined as a necessary party under Rule 19(a) of the Vermont Rules of Civil Procedure at defendants' request, but he was never served with an amended complaint raising a claim against him or naming him as a party. Approximately three weeks later, White entered a pro se notice of appearance as well as a pro se answer to the order joining him as a necessary party. Ten days later, and notwithstanding the fact that they had raised no claim against White, plaintiffs moved for partial summary judgment against him. In their motion, plaintiffs challenged White's right of first refusal, asserting that the right was inadequately described in White's 1978 deed, void for vagueness, ambiguous, and null and void. Defendants did not join in this motion, although they indicated that they did not oppose it.

¶ 11. White did not directly respond to the motion for summary judgment. Instead, on August 21, he filed an answer to plaintiffs' complaint, admitting and denying various allegations, and apparently attempting to raise claims against defendants and plaintiffs for breach of contract and interference with his contractual rights. White filed another document on August 25, asking the court to lift the preliminary injunction and allow him to purchase the land in question pursuant to his right of first refusal. Plaintiffs opposed White's motion and renewed their motion for summary judgment.

¶ 12. The court denied White's request to lift the injunction, and on October 4, it issued an order granting plaintiffs' motion for partial summary judgment. The court stated that "as the case has developed," plaintiffs were now arguing that White's right of first refusal was invalid, or if it was valid, it was not properly exercised, and it was on these two "claims" that plaintiffs now moved for summary judgment. The court concluded that White had not validly exercised his right of first refusal because he had not accepted the offers made by plaintiffs on identical terms. The court also found that White lacked the necessary funds to close on the property within sixty days of the notice of exercise of his right of first refusal, as required by his deed, because his attorney had indicated in a June 28 letter that he would need two days' notice to wire the necessary funds, which would be either one or two days too late. The court thus concluded that White's right of first refusal had been extinguished by its own terms and, as a matter of law, it was of no further force and effect.

¶ 13. White obtained counsel, and filed a motion to void or reconsider the judgment. The court denied the motion, rejecting White's contention that plaintiffs lacked standing to challenge a contract to which they were not parties. The court reasoned that in this case it had been confronted with mutually exclusive contractual rights to purchase real property, and when "more than one party claims an equitable interest in real property, there is a 'community of interest' supporting jurisdiction over both parties." In other words, the court explained, plaintiffs presented an "actual case or controversy" because they were requesting specific enforcement of their contract, and White was a necessary party because without his presence the court could not fashion a complete remedy for the controversy. Thus, the court concluded, White's presence avoided, rather than created, the danger of an advisory opinion, and as a result, it had jurisdiction to determine the status of these competing rights to the real estate. This appeal followed.

¶ 14. We vacate the trial court's decision. As discussed below, plaintiffs had no standing to seek a declaration of White's rights under his contract with defendants' predecessors in interest, and the court therefore lacked jurisdiction to decide these issues on plaintiffs' motion for summary judgment.

¶ 15. Vermont courts have "subject matter jurisdiction only over actual cases or controversies involving litigants with adverse

interests." *Brod v. Agency of Natural Res.*, 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286. One element of the "case or controversy requirement is that plaintiffs must have standing, that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998). Without standing, the court has no jurisdiction over a petition for declaratory relief. See *Brod*, 2007 VT 87, ¶ 2 (plaintiff "must demonstrate standing for a court to have jurisdiction over a petition for declaratory relief" (quotation omitted)); *Ladd v. Valerio*, 2005 VT 81, ¶ 3, 178 Vt. 614, 883 A.2d 764 (mem.) ("Every petition for declaratory relief must be rooted in an actual controversy between the parties; otherwise, the plaintiff lacks standing to sue, and the courts have no jurisdiction to grant the relief sought."); *Parker*, 169 Vt. at 77, 726 A.2d at 480 (explaining that standing is jurisdictional requirement in declaratory-judgment actions because declaratory judgments "can only provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy" (quotation omitted)). Because standing is a necessary component of the court's subject-matter jurisdiction, it cannot be waived, and its absence can be raised at any time. See *Brod*, 2007 VT 87, ¶ 2 (equating Court's review of dismissal for lack of standing in declaratory-judgment action with dismissal for lack of subject-matter jurisdiction); *Town of Charlotte v. Richmond*, 158 Vt. 354, 357-58, 609 A.2d 638, 640 (1992) (subject-matter jurisdiction cannot be waived and can be raised at any time); *Harris v. Evans*, 20 F.3d 1118, 1121 n.4 (11th Cir. 1994) (noting that standing cannot be waived and may be asserted at any stage of litigation); *Palmer v. Bahm*, 2006 MT 29, ¶ 16, 331 Mont. 105, 128 P.3d 1031 (stating that standing is "threshold requirement of every case" and may be raised at any time); see also *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention.").

¶ 16. Plaintiffs have no standing to seek the declaratory relief granted by the court because they cannot show that they suffered any personal injury fairly traceable to White's allegedly unlawful conduct that is likely to be redressed by the requested relief. *Parker*, 169 Vt. at 77, 726 A.2d at 480 (setting forth elements of standing). Plaintiffs have not been wronged by White; their complaint lies with the allegedly unlawful behavior of

defendants Van Guilder and Bletz in selling them a "first option to buy" that they did not possess. Plaintiffs are strangers to the contract between White and defendants, and as such, they have no right to challenge the validity of White's contractual rights. See *Bryant v. Strong*, 141 Vt. 244, 245 n.1, 448 A.2d 142, 143 n.1 (1982) (noting that individual who was not a party to contract has no standing to challenge contract's validity); see also *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 109 (Ill. App. Ct. 1991) (finding no standing in similar situation); *Palmer*, 2006 MT 29, ¶ 13 ("Generally, unless he is an intended third-party beneficiary of the contract, a stranger to a contract lacks standing to bring an action for breach of that contract.") (citing 13 S. Williston & R. Lord, A Treatise on the Law of Contracts § 37:1, at 5 (4th ed. 2000) (with the exception of third-party beneficiaries, "courts recite talismanically . . . that 'strangers to a contract' have no rights under the contract")). The fact that plaintiffs have a contractual relationship with defendants does not give them standing to challenge White's contract with defendants, nor can plaintiffs claim that they were intended as third-party beneficiaries of White's 1978 contract with the Van Guilders. See *White Hen*, 574 N.E.2d at 109 (explaining that the mere existence of a contractual relationship between a potential purchaser and a landowner does not confer privity upon the purchaser to challenge the landowner's contract with a third party concerning the same land when the prospective purchasers are strangers to such contract and third-party contract was obviously not made for their benefit).

¶ 17. We did not hold otherwise in *Poulin v. Town of Danville*, 128 Vt. 161, 260 A.2d 208 (1969), the case cited by the trial court to support its finding of jurisdiction. Unlike our recent decisions in *Brod* and *Parker*, we did not directly address issues of standing in *Poulin*. Instead, the *Poulin* Court considered whether a certain action was properly brought as a petition for declaratory judgment and whether two parties could be properly joined as defendants. *Id.* at 165-66, 260 A.2d at 211.

¶ 18. In *Poulin*, a landowner was being taxed by two towns, each of which claimed taxing authority over his land. The landowner filed a petition for declaratory relief, seeking to join both towns as defendants. *Id.* at 163, 260 A.2d at 209. Citing an earlier case, one town essentially argued that it could not be joined as a defendant with the second town because relief could be granted in favor of only one of them. *Id.* at 168, 260 A.2d at 212. The court

rejected this argument, and distinguished the earlier case. It found that defendants were properly joined because they shared a "community of interest" in the subject matter being litigated, the common interest being the jurisdiction to tax the subject property, which both towns claimed to have. *Id.*

¶ 19. This "community of interest" language relates to questions of joinder; it does not obviate the basic requirements of standing described repeatedly by this Court. Cf. V.R.C.P. 20(a) (joinder of defendants permissible "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"). Unlike the landowner in *Poulin*, plaintiffs did not have standing to file a declaratory judgment action, and plaintiffs were not seeking to join White as a defendant with Bletz and Van Guilder. Any "community of interest" that White might share with defendants in this litigation cannot confer standing on plaintiffs where it is otherwise lacking. Plaintiffs certainly cannot claim a "community of interest" in White's contractual rights, which was the issue raised in their motion for summary judgment and decided by the court.

¶ 20. We note, moreover, that the trial court incorrectly found that plaintiffs were seeking specific enforcement of their contracts with defendants, and that the parties thus had competing interests in the real estate. In fact, plaintiffs sought only compensatory damages from defendants. While it is obvious that plaintiffs would like to purchase the property, that did not confer upon them the right to challenge White's deed.

¶ 21. Any other conclusion would contravene one of the fundamental principles underlying the standing requirement, which is a "general prohibition on a litigant's raising another person's legal rights." *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997); see also *Palmer*, 2006 MT 29, ¶ 14 (explaining that "[a]llowing strangers to a contract to compel strict compliance with contractual provisions despite the parties' mutual satisfaction with imperfect performance would . . . undermine the transactional efficiency that contracts promote"). The unfairness of such an approach is manifest here — by allowing plaintiffs to litigate the nature of defendants' contractual

rights with White, defendants avoided any discussion of evidence suggesting that they were in fact satisfied with White's performance and had agreed to sell the property to him. Indeed, they admitted in their answers to plaintiffs' complaint that they intended to sell the properties to White. Defendants cannot have it both ways — they must take a stand on whether they intended to sell White the property or whether they believe that White violated the terms of their agreement. See *Harris*, 20 F.3d at 1121 (stating that the "central purpose of the standing requirement [is] to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly").

¶ 22. It is of no moment that White entered an appearance in the case and filed an "answer" to plaintiffs' complaint. Plaintiffs raised no claim against White in their complaint, and therefore his responses to plaintiffs' complaint were irrelevant. Moreover, it is apparent from the record that plaintiffs did not file any claim against White because they knew they lacked standing to do so. Indeed, at the time they filed their complaint, plaintiffs expressed their fear that defendants would choose not to litigate the issue of whether White properly exercised his right of first refusal. The record also shows that shortly after White filed his answer to plaintiffs' complaint, it was pointed out to plaintiffs and defendant Van Guilder that no amended or third-party complaint had ever been filed against White, and that the parties should confer with one another to decide who should file such a complaint. As is obvious, the parties chose not to do so to their mutual benefit. Rather than filing a claim against White, plaintiffs renewed their motion for summary judgment, and defendants did nothing.

¶ 23. Plaintiffs cannot accomplish through procedural chicanery what they plainly lacked authority to accomplish directly through their complaint. As discussed above, plaintiffs lack standing because they are strangers to White's contract. White's actions cannot change this fact. He could not confer standing upon them by answering their complaint, nor could he waive the standing requirement through his actions. See *Town of Charlotte*, 158 Vt. at 357-58, 609 A.2d at 640 (subject matter jurisdiction cannot be waived and can be raised at any time). To hold otherwise would allow the court to decide cases in the absence of a case or controversy. We wholly reject such an approach. See *Brod*, 2007

VT 87, ¶ 8 (without standing, "any judicial decision would be merely advisory, and Vermont courts are without constitutional authority to issue advisory opinions"). Plaintiffs' lack of standing deprived the court of jurisdiction to consider and grant the requested relief.

¶ 24. Finally, we note that even if the court had jurisdiction, which it did not, there were disputes of material fact evident in the filings regarding White's exercise of his right of first refusal, and defendants' acceptance of the same. Putting aside the evidence of prior contracts and conveyances that may have directly violated White's rights, there appear to be disputes over whether defendants disclosed to White the precise terms of the proposed sale to plaintiffs and clarified whether plaintiffs would be receiving credit for their option payments at closing; whether defendants accepted White's performance, waived the "exact terms" requirement and were prepared to sell him the property; what effect the preliminary injunction had on both White's and defendants' ability to close on the property within sixty days; and numerous other issues. See, e.g., *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 227-28 (7th Cir. 1996) (finding it implicit in grant of right of first refusal that grantor can waive requirement of an "exact match" between right-holder's offer and third-party offer, and noting additional requirement that grantor must act in good faith). As the proceedings in this case amply illustrate, these are issues that need to be litigated between White and defendants, not between White and plaintiffs.

¶ 25. Because the court lacked jurisdiction to grant the relief requested by plaintiffs, we vacate the trial court's decision. Given plaintiffs' outstanding claims against defendants, we remand for additional proceedings.

*Vacated and remanded.*