DA 09-0148

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 376N

STEVEN G. THORSON,

      Plaintiff and Appellant,

    v.

DEANNA S. REYNOLDS, aka
DEANNA SVORE REYNOLDS, aka
DEANNA R. REYNOLDS, aka
DEANNA RUTH REYNOLDS; and
TUNGSTEN HOLDINGS, INC.,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 08-050
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Danielle A.R. Coffman; Crowley, Fleck, PLLP; Kalispell, Montana

      For Appellees:

          Amy N. Guth; Attorney at Law; Libby, Montana
(for Tungsten Holdings, Inc.)

          Deanna S. Reynolds, (self-represented litigant); Oklahoma City,
Oklahoma

Submitted on Briefs:  September 3, 2009

Decided:  November 3, 2009

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Steven G. Thorson (Thorson) appeals from the order of Nineteenth Judicial District Court, Lincoln County, granting judgment in favor of Tungsten Holdings, Inc. (Tungsten) for claims of tortious interference with contract, negligent misrepresentation and deceit. The District Court also ordered that Thorson pay Tungsten $ 32,250 for abuse of process and denied Thorson's request for attorney fees.

¶3 The issues on appeal are as follows:

¶4 1. Did the District Court err when it granted judgment in favor of Tungsten and ordered that Thorson pay $32,250 to Tungsten for abuse of process.

¶5 2. Did the District Court err when it denied Thorson attorney fees.

¶6 In 2005, Deanna Reynolds (Reynolds) contacted Tungsten in response to one of Tungsten's property purchase solicitation letters, to inquire about selling Reynolds' property. Reynolds, who lives in Oklahoma, was not familiar with the property she owned near Libby, Montana. Approximately two weeks later, Susie Price, a Tungsten employee, contacted Reynolds again and indicated that Tungsten would purchase the Montana property for $75,000. At that point Reynolds decided not to sell her property to

2

Tungsten. Except for occasional solicitation letters, Reynolds and Tungsten had no further contact for approximately two years. On November 1, 2007, Susie Price and Reynolds spoke again and Reynolds indicated her desire to sell the property. Susie Price informed Reynolds that the offer still stood and that she would prepare an Agreement and send it to Reynolds. Shortly thereafter, Tungsten prepared the Agreement document describing the property by legal description and reciting Tungsten's $75,000 offer. Upon receipt Reynolds signed the Agreement and returned it to Tungsten.

¶7 After Reynolds had sent the Agreement back to Tungsten she received a call from her cousin Thorson, who expressed his interest in purchasing the property as he owned an adjacent 40 acre lot. Over the course of several conversations, Thorson explained to Reynolds that he believed the Agreement between Reynolds and Tungsten was unenforceable and that she should sell the property to him. Based on this advice Reynolds did not sign or return the remainder of the transaction documents Tungsten had sent her. In early December 2007, Thorson called Tungsten several times and left messages explaining that he was holding up the sale. Tungsten principle Jay Dinning (Dinning) informed Thorson that he thought Tungsten and Reynolds had a deal and that he expected Reynolds to honor it. After speaking with Tungsten, Thorson informed Reynolds that he and his brother were still interested in purchasing the property. Reynolds agreed to sell the property to her cousins and Thorson called an attorney in Billings and asked her to prepare the Buy-Sell Agreement. This Buy-Sell Agreement between Reynolds and Thorson was finalized, signed and provided to Reynolds along with $2,000 in earnest money. Reynolds signed the Agreement with Thorson and

deposited the money on January 15, 2008. Despite this, on January 21, 2008, Reynolds called Tungsten and informed them that she wished to sell the property to Tungsten and not Thorson. Meanwhile, Thorson sent an email to Tungsten informing them that he had entered into a sale contract with Reynolds. On January 24, 2008, Thorson sent Tungsten a fax of the Buy-Sell Agreement he had with Reynolds. The following day Tungsten received the final paperwork Reynolds had sent regarding their agreement. At that time, Dinning walked the signed Warranty Deed down to the Clerk and Recorder's office and recorded it. He then sent Reynolds the check for $75,000.

¶8 On February 20, 2008, Thorson filed this lawsuit against Reynolds and Tungsten alleging that Reynolds breached her contract and that Tungsten committed tortuous interference with contract, negligent misrepresentation, and deceit. The District Court granted partial summary judgment in favor of Thorson with respect to his claim against Reynolds but held that Tungsten did not commit any of the acts Thorson alleged. Instead the District Court held that Thorson had abused process in bringing this lawsuit and ordered that he pay Tungsten $32,250.

¶9 On appeal, Thorson argues that the District Court erred in concluding that Tungsten had a valid contract with Reynolds. He asserts that, since the District Court granted partial summary judgment in his favor with regard to his contract with Reynolds, it was in error for the District Court to have found for Tungsten on his claims that they interfered with his contract, negligently misrepresented to him that they would not pursue their Contract with Reynolds and committed tortuous deceit. Thorson also maintains that he is entitled to his attorney fees because "the [District] Court entered judgment in

4

Thorson's favor for breach of contract." Tungsten on the other hand, contends that not only has Thorson interfered with the Tungsten-Reynolds contract, but as a threshold matter, Thorson lacks standing to maintain this lawsuit. With regard to the issue of standing Tungsten relies on *Palmer v. Bahm*, 2006 MT 29, 231 Mont. 105, 128 P.3d 1031, where we held that "strangers to a contract have no rights under the contract." *Palmer*, ¶ 13. In that case we opined that "unless [a party] is an intended third-party beneficiary of the contract, a stranger to a contract lacks standing to bring an action for breach of that contract." *Palmer*, ¶ 13.

¶10 We review a district court's decision to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Kullick v. Skyline Homeowners Assoc.*, 2003 MT 137, ¶ 13, 316 Mont. 146, 69 P.3d 225.

¶11 It hardly bears repetition that standing is a threshold requirement of every case. As noted above, a third-party challenger who is not an intended beneficiary of a contract lacks standing to bring an action challenging that contract. *Palmer*, ¶ 13. Whereas neither party in this case maintains that Thorson is an intended third-party beneficiary, we conclude that he lacks standing to bring this action challenging the validity of the contract between Tungsten and Reynolds. Since we conclude that Thorson lacked standing to bring an action challenging this contract we need not move onto the merits of the underlying challenge. As such we conclude that the District Court properly ruled in favor of Tungsten and ordered Thorson to pay $32,250 for abuse of process.

¶12 As noted above, Thorson also maintains that he is entitled to his attorney fees because the District Court entered judgment in his favor for breach of contract. While it

5

is true that the District Court granted partial summary judgment in his favor, the judgment Thorson obtained was pursuant to his conversion claim not on an enforcement of any provision in his contract with Reynolds. Thus, we determine that the District Court properly denied Thorson his attorney fees.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions.

¶14 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE