STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 131-8-14 Vtec |
| --- | --- |
| Vt Turquoise Hospitality LLC Discharge Permit | **DECISION ON MOTION** |

Applicant Vermont Turquoise Hospitality, LLC ("Vermont Turquoise") seeks an Indirect Discharge Permit for the collection, treatment, and discharge of domestic wastewater from the proposed Aeolus Mountain Spa, to be located at 5940 Main Street in the Town of Manchester, Vermont. Vermont Turquoise submitted an Indirect Discharge Permit application to the Vermont Agency of Natural Resources Department of Environmental Conservation ("DEC"). The DEC approved the application on August 6, 2014. Neighboring landowner Richard Smith ("Appellant") timely appealed that approval to this Court.

Appellant filed a 13-question Statement of Questions presenting issues generally related to the effect of the discharge of treated domestic wastewater on the water quality of the West Branch of the Batten Kill River under the Vermont Water Quality Standards, Indirect Discharge Rules, and Water Supply and Wastewater Disposal Rules. Vermont Turquoise moves for dismissal, alleging that Appellant lacks standing to pursue this appeal. Vermont Turquoise is represented by Christopher Roy, Esq. Appellant appears before the Court representing himself.

### Factual Background

For the sole purpose of putting the pending motion into context, the Court recites the following facts which it understands to be undisputed:

1. Vermont Turquoise sought an Indirect Discharge Permit for the collection, treatment, and discharge of domestic wastewater from the Aeolus Mountain Spa, an 80-room resort hotel, 160-seat restaurant, and spa that it plans to build at 5940 Main Street in the Town of Manchester, Vermont.

2. DEC approved Vermont Turquoise's application on August 6, 2014, authorizing the treatment and discharge, ultimately to groundwater, of domestic wastewater and indirectly

into the West Branch of the Batten Kill River. As designed by Franklin Parent of Long Trail Engineering, P.C., the collection and treatment system includes a septic tank, recirculating textile filter treatment system, a pump station, and dual alternating leach field disposal areas. The wastewater design flow of the system is 19,998 gallons per day (gpd).

3. The Aeolus Mountain Spa will be located approximately 500 feet east of the West Branch of the Batten Kill River.

4. Appellant resides at 294 Landmark Lane in Manchester, Vermont approximately one-third of a mile (1760 feet) west of the proposed location for the Aeolus Mountain Spa.

5. Appellant alleges that he uses the Batten Kill River in the area of the proposed project for recreational purposes, including canoeing, swimming, and tubing on the river and walking alongside the river. Appellant also alleges an aesthetic interest in the Batten Kill River, including crossing and viewing the river and as an asset to his family-operated tour service of areas in the Batten Kill watershed.

6. Appellant alleges that the project will degrade both the water quality and the visual appearance of the Batten Kill River and could affect both his personal and his clients' use and enjoyment of the river.

### Discussion

Vermont Turquoise has moved to dismiss the appeal now before the Court pursuant to Rule 5(d)(2) of the Vermont Rules of Environmental Court Proceedings and 10 V.S.A. § 8504(a). IN the pending motion, Vermont Turquoise alleges that Appellant is not a "person aggrieved" with respect to the Indirect Discharge Permit issued by the DEC because he lacks a sufficiently particularized interest, distinguishable from policy concerns of the general public, protected by the Water Pollution Control Act (10 V.S.A Chapter 47). In response, Appellant alleges that his recreational use of the Batten Kill River for canoeing, tubing, and swimming, as well as his personal and business interest in the aesthetic integrity of the Batten Kill River and watershed are sufficiently particularized and protected under Chapter 47 to satisfy the definition of a "person aggrieved."

## I. Standard for Dismissal

This Court's jurisdiction extends only to cases and controversies raised by a party with standing. See Bischoff v. Bletz, 183 Vt. 235 (2008); Parker v. Town of Milton, 169 Vt. 74, 77 (1998). We review motions for dismissal based on standing under Rule 12(b)(1) of the Vermont Rules of Civil Procedure, which governs motions to dismiss for lack of subject matter jurisdiction. In re Goddard College Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.).

## II. Standard for Standing

In the context of an Indirect Discharge Permit, a party has standing to appeal a DEC act or decision if they are aggrieved by it. 10 V.S.A. § 8504(a). Under section 8503(7), a party is "aggrieved" by an act or decision if they "allege an injury to a particularized interest protected by the provisions of law listed in section 8503 of [Title 10]," which includes the Water Pollution Control Act (10 V.S.A. Chapter 47). See 10 V.S.A. § 1269 (directing that appeals of acts or decisions regarding water pollution control be made in accordance with chapter 220 of Title 10).

Standing to appeal an act or decision of the DEC parallels the elements of standing articulated by the United States Supreme Court and adopted by Vermont; those standing elements require that a party whose standing has been challenged[1] to show (1) an actual or imminent injury in fact to a particularized interest, (2) a causal connection between the injury and the act or decision under appeal, and (3) that it is likely that the injury can be redressed by a favorable decision by this Court. See In re Bennington Wal-Mart Demolition/Const. Permit, No. 158-10-11 Vtec, slip op. at 7 (Vt. Sup. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.) (applying federal standing requirements in Act 250 appeal); Parker, 169 Vt. at 77–78 (adopting the federal standing requirements); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (articulating the federal standing requirements).

To determine whether the injury alleged is to a particularized interest, the Court asks whether the injuries are particular to the party appealing the DEC's action rather than "a

---

[1] One who "claims party status as a person aggrieved . . . will be automatically accorded that that status when the notice of appeal is filed unless the court otherwise determines on motion to dismiss [that] party." V.R.E.C.P. 5(d)(2).

3

general policy concern shared by the general public." Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 7 (citing In re Pion Sand & Gravel Pit, No. 28-2-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jul. 2, 2010) (Durkin, J.)). This does not require that an interest is unique to a single party; an interest can still be particularized even if it is shared with others. In re McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 7 (Vt. Envtl. Bd. Sept. 19, 2003) (noting the irrelevance of other individuals being similarly affected by a development as long as the impacts on the parties are "particular to them, concrete, and [are not impacts] affecting the common rights of all persons"). The Court will also consider whether the alleged injury is to an interest protected by the law under which the person is appealing—here, the Water Pollution Control Act (10 V.S.A. Chapter 47).

To determine whether the alleged injury was caused by an act or decision under appeal, this Court asks whether such an act or decision may affect the party's interest. Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 9. Like the standard under Act 250, proof of a "causal connection" between the injury alleged and the act or decision requires "more than mere speculation and theory," but may be satisfied by a showing of a "reasonable possibility" that a decision on the proposed project may affect the party's particularized interest. Id. at 9–10 (citing In re Granville Mfg. Co., Inc., No. 2-1-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin J.) (stating that a party need only "refer to evidence that demonstrates a non-speculative causal connection between the proposed project and [his or her] particularized interests")). We review Vermont Turquoise's challenge to Appellant's party status with these standards in mind.

### III. **Water Pollution Control Act**

Vermont's Indirect Discharge Rules ("the IDR"), § 14-103(a), establish standards and procedures for reviewing indirect discharge permit applications and implement the policies of the Water Pollution Control Act (10 V.S.A. Chapter 47). Code of Vt. Rules 12 033 003, available at http://www.lexisnexis.com/hottopics/codeofvtrules. One stated purpose of the IDR is to insure that "[i]ndirect discharges and associated treatment and disposal systems are designed and constructed in a manner that will provide reliable protection of the public health, groundwater, and surface water during operation and maintenance." Id. Another stated

4

purpose of the IDR is to ensure that "[n]ew indirect discharges of sewage from systems with a design capacity of 6,500 gpd or more: (A) will not significantly alter the aquatic biota in the receiving waters, (B) will not pose more than a negligible risk to the public health, and (C) will be consistent with existing and potential beneficial uses of the waters." Id.

Appellant argues that he has a particularized interest under the IDR that would be affected by the proposed project. In support of this argument, Appellant alleges that he uses the Batten Kill River for recreational purposes, including canoeing, swimming, and tubing on the river, and walking alongside the river. Appellant also alleges an aesthetic interest in the Batten Kill River. In addition to crossing and viewing the river in the course of his regular affairs, Appellant owns a family-operated tour service of areas in the Batten Kill watershed. He alleges that both his personal and business interests may be affected by the proposed indirect discharge because it may degrade both the water quality and the visual appearance of the Batten Kill River, thereby affecting his and his clients' use and enjoyment of the river.

As this Court held in In re Bennington Wal-Mart, "[w]hile generalized harm to the . . . environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." No. 158-10-11 Vtec, slip op. at 7 (citations omitted). In that case, this Court held that persons alleging use of a river "by walking, cycling, and running nearby or by wading, swimming, or fishing in the river" had a particularized interest in river's water quality. Id. Appellant's recreational use of the river is likewise sufficiently particular to him.

Appellant also argues that there is a causal connection between the Indirect Discharge Permit and injury to these recreational interests. In support of this argument, he alleges that by authorizing discharge, the Indirect Discharge Permit may adversely affect water quality in the Batten Kill River and therefore his recreational interests. Among the IDR's stated purpose is to ensure that new systems having discharges of 6,500 gpd or greater do not impact the biota of receiving waters and will ensure consistency with existing uses of those waters. Vermont Turquoise's permitted system has a design flow capacity of nearly 20,000 gpd, more than three-times the capacity articulated in the IDR for this increased scrutiny. Based on this capacity, we cannot say there is no "reasonable possibility" that Appellant's particularized interest may be

5

affected by the decision to grant Vermont Turquoise's Indirect Discharge Permit. Further, we find that it is likely that an injury to Appellant's particularized interest can be redressed by a favorable decision by this Court.

## Conclusion

For the reasons discussed above, we conclude that Appellant has standing in this appeal under the Water Pollution Control Act because he has alleged a particularized interest protected by that chapter of Title 10. We therefore **DENY** Vermont Turquoise's Motion to Dismiss for lack of standing.

Electronically signed on November 06, 2014 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

6