# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 71-5-14 Vtec |

| | |
|---|---|
| Orlandi Act 250 Kennel Permit<br>(Application No. 9A0349) | DECISION ON MOTION |

Claudia Orlandi ("Ms. Orlandi") seeks an Act 250 Land Use Permit for an existing dog breeding kennel located on Monkton Road in the Town of Monkton, Vermont ("the Town"). The District # 9 Environmental Commission ("the Commission") approved Ms. Orlandi's application and issued Permit # 9A0349 ("the Permit"), along with Findings of Fact, Conclusions of Law, and Order dated April 24, 2014. Abutting property owners Allan and Michael Brisson timely appealed that decision to this Court. Ms. Orlandi has now moved to dismiss the appeal for Appellants' lack of standing and for judgment on the pleadings. Ms. Orlandi is represented by attorney James A. Dumont, and Appellants are represented by attorneys Matthew E. Rohrbaugh, Colin R. Hagan, and David J. Shlansky. Also participating in this appeal is the Vermont Natural Resources Board ("NRB") represented by attorney Peter J. Gill.

## Factual Background

For the sole purpose of putting the pending motions into context the Court recites the following facts which it understands to be undisputed unless otherwise noted:

1. Ms. Orlandi owns approximately 194-acres of land ("the Property)" located on the west side of Monkton Road in the Town of Monkton, Vermont.

2. Ms. Orlandi, a world famous breeder and exhibiter of basset hounds, owns and operates a dog breeding kennel on the Property where she breeds and trains basset hounds for show. Of the dogs she breeds, Ms. Orlandi sells only those she decides not to keep for show, amounting to approximately 10 dogs per year.

3. Ms. Orlandi has operated a dog kennel on the Property without an Act 250 Land Use Permit since the early 1990s. The kennel is for breeding purposes only; it does not function as a boarding kennel. The only non-resident dogs permitted on the Property are those to be bred with one of Ms. Orlandi's hounds.

4.      The developed portion of Ms. Orlandi's property that contains the kennel is located on approximately two acres of the 194-acre parcel.  The kennel is approximately 1,200 feet west of the eastern property line along Monkton Road and approximately 1,200 feet south of the northern property line.  The intervening space to the east is partially forested and the intervening space to the north is occupied by a small tree-lined ridge.

5.      The kennel consists of a main building measuring 60 feet by 70 feet, a one-bedroom caretaker's apartment, a number of outdoor dog runs, a fenced area to the west of the main building where the dogs are tested and trained ("the starting pen"), a small barn for rabbits used in training and testing the dogs, and two signs.  The remainder of the Property is undeveloped.

6.      The kennel has a physical maximum capacity of 45 hounds and averages approximately 25 at any given time, never having exceeding more than 35 hounds at once.  The hounds are kept in the main building or the outdoor runs and are never off-leash or allowed to run free on the property.  Infrequently, the hounds are allowed to run off-leash within the starting pen to evaluate their scenting ability.

7.      On April 23, 2013, after being notified that the kennel constituted a commercial development requiring an Act 250 Land Use Permit, Ms. Orlandi applied for a permit rather than contesting Act 250 jurisdiction.  The Commission held a site visit and hearing on the application on July 10, 2013.  The Commission formally adjourned the hearing on April 10, 2014 after additional information had been received and deliberations held.  The Commission approved the application and issued Land Use Permit # 9A0349 ("the Permit") by written decision dated April 24, 2014.

8.      Allan and Michael Brisson ("Appellants") own approximately 324 acres of undeveloped land on Monkton Road, abutting the Property to the north.  Some portion of Appellants' property, including, we believe, Appellants' residential and farm structures, are in the neighboring Town of Ferrisburgh, Vermont.

9.      Appellants' southern property line is approximately 1,200 feet from the kennel.  The intervening space is occupied by a small, wooded ridge.  We have not been made aware of the distance between Applicant's kennel and Appellants' home or area on their property that they

2

frequently use, but understand from the layout of the parties' respective properties that this distance is in excess of 1,200 feet.

10. Appellants' property is located at a higher elevation and upstream from Ms. Orlandi's Property.

11. Appellants' parcel is used, in part, as a large-scale dairy farm, although Appellants have also applied for a zoning permit to conduct earth resource extraction operations on a portion of the parcel, including an area in Monkton near Ms. Orlandi's Property.

12. Appellants requested party status from the Commission under Act 250 Criteria 1 (with regards to air and water pollution), 5 (with regards to traffic), and 8 (with regards to aesthetics and wildlife habitat), and 10 (with regards to conformance with the Town Plan). The Commission denied Appellants party status for all Criteria except Criterion 10.

## Analysis

In their Statement of Questions, Appellants raise two general issues: first, whether they should have been granted party status with respect to Criteria 1, 5, and 8; and second, whether the kennel conforms or has the potential to be noncomforming with Criteria 1, 5, 8, and 10. Ms. Orlandi now moves to dismiss Questions 1-9 and 11, which relate solely to Criteria 1, 5, and 8, for which Appellants were denied party status, and Question 10, which relates to Criterion 10, for the failure to raise a triable issue. In the alternative, Ms. Orlandi moves for the entry of judgment against Appellants pursuant to Rule 12(c) of the Vermont Rules of Civil Procedure ("V.R.C.P."). Despite their failure to timely file a motion for party status under Criteria 1, 5, and 8 pursuant to Rule 5(d)(2) of the Vermont Rules of Environmental Court Procedure ("V.R.E.C.P."), Appellants now move for leave to file such a motion. We address Appellants' motion first, followed by Ms. Orlandi's.

**I. Leave to File a Motion for Party Status Under V.R.E.C.P. 5(d)(2)**

As a general rule, "[n]o aggrieved person may appeal an act or decision that was made by a district commission unless the person was granted party status by the district commission . . ., participated in the proceedings before the district commission, and retained party status at the end of the district commission proceedings." 10 V.S.A. § 8504(d)(1). Pursuant to our procedural rules, an appellant who claims party status under Act 250 Criteria notwithstanding the district commission's denial "must assert that claim by motion filed not later than the

3

deadline for filing a statement of questions on appeal." V.R.E.C.P. 5(d)(2). Unless a party appeals the district commission's denial, and the Court in turn grants party status, standing before the Environmental Division is limited to those Act 250 Criteria for which the district commission granted final party status. 10 V.S.A. § 8504(d)(1)–(2). This "'mandatory directive requires strict compliance' and operates to put 'the parties and the Court on clear notice of the exceptional circumstances that warrant an appeal under § 8504(d)(2).'" In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2010) (quoting In re Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.)).

In the present case, the Commission denied Appellants party status under Criteria 1, 5, and 8. Pursuant to V.R.E.C.P. 5(d)(2), Appellants had until the deadline for filing a statement of questions, or 20 days after filing their Notice of Appeal on May 27, 2014, to assert their claim for party status under those Criteria. Despite filing a Statement of Questions on June 16, Appellants let an additional month elapse before requesting party status pursuant to Rule 5(d)(2). In a July 16 motion for leave to file a motion for party status pursuant to V.R.E.C.P. 5(d)(2), Appellants' attorneys explained that Appellants failure to timely assert a claim for party status was due in part to a family emergency. Accepting that representation, Ms. Orlandi asked the Court to disregard the delay and consider Appellants' motion for party status. The NRB has also advised that it does not object to Appellants' motion to file late for party status.

As neither Ms. Orlandi nor the NRB opposes the Court considering Appellants' untimely motion for party status, and because such late filing did not cause unreasonable delay or prejudice to the parties, we **GRANT** Appellants' motion for leave to file a late motion and consider Appellants' request for party status concurrently with Ms. Orlandi's motion to dismiss. The NRB has filed a memorandum in support of Ms. Orlandi's motion to dismiss the appeal.

II.      **Appellants' Questions 1-9: Party Status Under Criteria 1, 5, and 8**

The Court treats determinations of party status as a preliminary issue of standing. See In re Champlain Parkway Act 250 Permit, No. 68-5-12 Vtec, slip op. at 4–6 (Vt. Super. Ct. Envtl. Div. Nov. 14, 2012) (Walsh, J.) (considering standing principles in determining party status). Whether a party has standing affects this Court's subject matter jurisdiction. Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235 (explaining that within the jurisdictional requirement of "actual

case or controversy", standing requires that a plaintiff "must have suffered a particular injury[1] that is attributable to the defendant and that can be redressed by a court of law."). As such, we review the pending motion under the standard of review afforded by V.R.C.P.12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. In re Goddard College Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.). We accept as true all uncontroverted factual allegations and construe them in the light most favorable to the nonmoving party. Id.; see also Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245 (describing standard of review for 12(b)(1) motion).

To be afforded party status, an appellant must have a "particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" or this Court on appeal. 10 V.S.A. § 6085(c)(1)(E). An interest is particularized if it is specific to the appellant rather than a general policy concern shared with the public, although an interest may still be particularized even if it is shared with multiple members of the general public. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.); Re: McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 7 (Vt. Envtl. Bd. Sept. 19, 2003) (noting that it is irrelevant if others are similarly affected by a development if the impacts on the parties are "particular to them, concrete, and [are not impacts] affecting the common rights of all persons"). To demonstrate that this particularized interest may be affected by an act or decision by a district commission, an appellant must allege some causal relation between the proposed development and the impact upon his interest. In re Bennington Wal-Mart Demolition/Constr. Permit, No. 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.). A relationship is causal if there is a reasonable possibility that the commission's decision may affect this particularized interest. Id.

A.    Criterion 5: Traffic

Although Appellants request party status under Criterion 5 in the introductory paragraph of their motion, they fail to discuss that Criterion in the substance of the motion or in any filing made since. Appellants have neither alleged an interest protected by Criterion 5 nor any possibility that they will be affected by the Commission's decision and have failed to satisfy

---

[1] We understand that this jurisdictional limitation is made applicable to state land use permit litigation under 10 V.S.A. § 6085(c)(1)(E), detailed below.

the requirements for party status under 10 V.S.A. § 6085(c)(1)(E). We therefore **DENY** Appellants' motion for party status under Criterion 5 and **GRANT** Ms. Orlandi's motion to dismiss Appellants' appeal as it relates to Criterion 5. Questions 6 and 7 of Appellants' Statement of Questions are therefore **DISMISSED**.

B.     Criterion 1: Air Pollution

Appellants allege that the noise from Ms. Orlandi's barking hounds may rise to levels sufficient to cause adverse health effects and therefore there is a reasonable possibility of undue air pollution. Criterion 1 requires a finding that a development will not result in undue air pollution. 10 V.S.A. § 6086(a)(1). "Noise analysis under Criterion 1 focuses primarily on the health and safety impacts of noise . . . ." In re Goddard College, Nos. 175-12-11 Vtec and 173-12-12 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Jan. 6, 2014) (Walsh, J.). "The test for undue air pollution caused by noise is whether the noise has impacts rising above annoyance and aggravation to cause adverse health effects such as hearing damage." Id. (quotations omitted). Appellants identify the proximity of their property line to Ms. Orlandi's kennel, which is located 1,200 feet to the south, as a particularized interest. It is undisputed that Appellants' property line lies 1,200 feet from the kennel, that the intervening area is occupied by a heavily wooded ridge, that the area presently undeveloped, and that Appellants' residence is not located on that portion of the property—it is in fact located farther away on their property, in a neighboring town.

Although, as Appellants state, it "may be possible for the dogs to be heard as much as 1,200 feet away from the kennel" this does not satisfy the undeniably low standard that there be a reasonable possibility that the kennel may affect any interest Appellants may have. Simply owning property that abuts a project parcel does not, without more, establish a particularized interest that may be affected by a development. See In re Bostwick Road Two-Lot Subdivision, No. 211-10-05 Vtec, slip op. at 2–3 (Vt. Envtl. Ct. Feb. 24, 2006) (Durkin, J.), aff'd, No. 2006-128 (Vt. 2007) (mem.) (holding, in a municipal zoning appeal, that an abutting landowner who lived 2,000 feet, as the crow flies, from a proposed development was not in the "immediate neighborhood" and could not demonstrate a physical or environmental impact on his interest because the proposed development would not be visible from appellant's property due to the surrounding environment.). Appellants provide no evidence to support a preliminary

6

determination that Ms. Orlandi's kennel may adversely affect an interest particular to Appellants that is protected by Criterion 1 as it relates to noise, other than the proximity of their property line to the kennel and that the kennel may somehow impact their plans to establish an earth resource extraction operation on this area of their property. This is not an interest protected by Criterion 1. Appellants have offered nothing as to how they use this portion of their property or how that use could be impacted by the noise of the dogs barking, whenever it is audible. Further, they do not allege any possibility that they could suffer adverse health impacts from the noise of Ms. Orlandi's hounds; they have not even provided specific evidence to refute Ms. Orlandi's representations that the kennel dogs' barking is barely discernible at their shared boundary line. In short, Appellants have presented no specific evidence to substantiate the bold assertions from their pleadings.

For this Court to afford party status, an appellant must offer sufficient facts to establish a <u>reasonable possibility</u> that a particularized interest protected by a specific Criterion <u>may be affected</u>. Appellants have failed to meet this low threshold burden. We therefore **DENY** Appellants' motion for party status under Criterion 1 and **GRANT** Ms. Orlandi's motion to dismiss Appellants appeal as it relates to Criterion 1-Noise. Questions 1 and 2 of Appellants' Statement of Questions which relate solely to Criterion 1 are therefore **DISMISSED**.

C.      <u>Criterion 1 and 1(B): Water Pollution</u>

Appellants contend that Ms. Orlandi's kennel may generate more wastewater than the design capacity of the wastewater system and that waste from the hounds themselves could somehow impact groundwater resources, which they allege may or may not exist.[2] They allege that the potential for contamination is sufficient for standing under Criterion 1(B) as it relates

---

[2] Appellants state that "[w]ithout the benefit of discovery, it would be impossible for Appellants to establish any potential injury to groundwater resources" and that the Commission's decision "demonstrates the unexplored possibility for leaching into groundwater resources that benefit Appellants." (Appellants' Reply to NRB's Resp. and Appellee's Reply at 7, filed Aug. 8, 2014). These assertions appear to be admissions that Appellants have no foundation for their claims, but would like the opportunity to engage in a discovery-based fishing expedition in the hopes that the factual foundation for their bald-faced assertions may be discovered. No Vermont courts are called upon to allow such creation of a claim through discovery, and we cannot allow it here.

An appellant cannot gain party status by making what they admit to be purely speculative allegations and asserting that discovery is necessary to determine whether or not they have any interest that may be affected. To hold otherwise would eviscerate the legislatively defined requirements for obtaining party status in an Act 250 appeal by granting party status to those who have not yet established a particularized interest that may be affected but to those who speculate that they might.

to water pollution. For the reasons detailed below, we conclude that Appellants have failed to present sufficient facts to substantiate this assertion as well.

Criterion 1(B) requires a finding that a development will not result in undue water pollution and prohibits "the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B). Analysis under Criterion 1(B) focuses on compliance with any "applicable health and environmental conservation department regulations regarding the disposal of wastes." Id.

Appellants identify an interest in ensuring that the kennel does not, at some point in the future, violate health and environmental conservation department regulations regarding waste disposal. They do not suggest that their interest in Ms. Orlandi's compliance with the regulations is specific to preventing pollution of or protecting their own property and water or any water that they access or use. In fact, they fail to present any facts to substantiate their claims, other than generalized assertions.

In regards to this particular analysis, the only facts presented, even when viewed in a light most favorable to Appellants, confirm the absence of a factual foundation for Appellants' party status claims. It is undisputed that Appellants' property is located uphill and upstream from Ms. Orlandi's kennel. Appellants also do not provide any foundation to dispute our understanding that water and the contaminants that water transmits do not flow uphill or upstream. Appellants have made no allegation as to how Ms. Orlandi's wastewater system, even were it to fail, would affect them. Furthermore, they provide no evidence to support a finding that the kennel is currently not in compliance with any applicable health and environmental conservation department regulations.

There is an irony in the lack of substantiation that Appellants present to support their claims, given the circumstances surrounding the pending application. Ms. Orlandi does not now dispute that she built her kennel without a needed state land use permit and that she has operated her kennel for years. Thus, Appellants have had the opportunity to observe and document the kennel operations for years. Usually, neighbors asserting party status do not have such an opportunity. However, even with this opportunity, Appellants have failed to document any environmental impacts upon their interests that could be protected in these

8

state land use proceedings.  In these circumstances, we conclude that Appellants' omissions are illustrative of the lack of an impact that can be addressed in these proceedings.

Appellants' assertion that "there is no indication as to how long [the wastewater system's] allegedly proper function will continue if it is operating above capacity" does not satisfy the standard for an interest to be particularized.  Such an interest, without a link to a current violation or to Appellants property, is not specific to Appellant and is little more than a general policy concern shared with the public.  Appellants have therefore failed to establish either a particularized interest or a reasonable possibility that the kennel may affect an interest protected by Criterion 1(B).  We therefore **DENY** Appellants' motion for party status under Criterion 1(B) and **GRANT** Ms. Orlandi's motion to dismiss the appeal as it relates to Criterion 1(B).  Questions 4 and 5 of Appellants' Statement of Questions which relate solely to Criterion 1(B) are therefore **DISMISSED**.

D.    Criterion 8: Aesthetics and Wildlife Habitat

Appellants allege that Ms. Orlandi's kennel is inconsistent with the character of the surrounding area, which includes large-scale farming and other industrial operations, and may therefore have an undue adverse effect on the aesthetics of the area.  For the reasons stated below, we conclude that Appellants have failed to present any factual foundation for their assertion.

Criterion 8 requires a finding that a development will not have an "undue adverse effect" on the aesthetics of the surrounding area, and Criterion 8(A) specifically protects wildlife habitat and endangered species.  10 V.S.A. § 6086(a)(8).  Analysis under Criterion 8 focuses on a development's harmony with its surroundings and whether it violates a clear, written community standard on preservation of aesthetics or natural beauty; offends the sensibilities of the average person; or fails to contain reasonable mitigating measures to improve the project's harmony with its surroundings.  See In re Rinkers, 2011 VT 78, ¶ 9, 190 Vt. 567, 27 A.3d 334 (endorsing use of the Quechee test for determining whether an Act 250 application complies with Criterion 8); In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 20 (establishing the standard for an undue impact).  Criterion 8(A) specifically focuses on whether a development will "destroy or significantly imperil necessary wildlife habitat or any endangered species."  10 V.S.A. § 6068(a)(8)(A).

9

Appellants identify the agricultural operations and contemplated earth resource extraction operations at their property as particularized interests protected by Criterion 8. That these interests "stand to suffer injury" if the kennel is considered compatible with the character of the surrounding area, however, is nothing more than a general policy concern shared with the public. Appellants have not alleged that they can see the kennel from their property or that they use their property in any way that gives rise to a particularized interest in the aesthetics of the development. Furthermore, Appellants make no allegations concerning the kennel's impact on wildlife habitat, either on the Property or the surrounding area, or the presence of any endangered species. In fact, Appellants fail to dispute a Vermont Agency of Natural Resources map in the record that indicates the absence of endangered species in the surrounding area.

Regardless of whether Appellants' interest is, in fact, particularized, they have also failed to establish any reasonable possibility that the kennel may affect their interest in any way. They provide nothing more than unsupported allegations that the kennel does not "fit" in the context of an area dominated by farming and other industrial operations or speculation that the barking of the dogs could impact birds or other wildlife.

Appellants have therefore failed to establish either a particularized interest or a reasonable possibility that the kennel may affect an interest protected by Criterion 8. We therefore **DENY** Appellants' motion for party status under Criterion 8 and **GRANT** Ms. Orlandi's motion to dismiss Appellants' appeal as it relates to Criterion 8. Questions 8 and 9 of Appellants' Statement of Questions which relate solely to Criterion 8 are therefore **DISMISSED**.

III.     **Appellants' Question 10: Ms. Orlandi's Motion to Dismiss Under Criterion 10**

Criterion 10 requires Ms. Orlandi's kennel conform to a "duly adopted local or regional plan or capital program." 10 V.S.A. § 6086(a)(10). Appellants' Question 10 asks whether, with respect to Criterion 10, the kennel is or has the potential to be incompatible with the goals and objectives of the Monkton Town Plan. Ms. Orlandi argues that the Plan's goals and objectives cited by Appellants lack specific enforcement standards and therefore fails to provide an adequate basis to assess the kennel's potential conflict with those provisions of the Town Plan. For the reasons stated below, we agree with that assessment.

Whether the provisions of the Town Plan that Appellants reference in their Question 10 are enforceable, however, goes to the merits of the claim, which we need not address at this

10

time.  In re Champlain Parkway Act 250 Permit, No. 68-5-12 Vtec, slip op. at 3-4 (Vt. Super. Ct. Envtl. Div. Nov. 14, 2012) (Walsh, J.).  Although Ms. Orlandi does not directly move to dismiss Question 10 as it relates to Appellants' party status under Criterion 10, this Court may consider issues of standing at any time and chooses to do so now.  See V.R.E.C.P. 5(d)(2) (recognizing the court's authority to determine an appellant's or interested person's party status); Old Railroad Bed, LLC v. Marcus, 2014 VT 23, ¶ 16 n.5 (recognizing that because "standing is a jurisdictional issue" it may be examined by the Court on its own motion).

Under Criterion 10, every resident of the town where a development is proposed has a particularized interest, distinct and different from a general policy concern shared with the public, to ensure that the development complies with their town plan.  In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 17 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.) (citation omitted).  While it is undisputed that Appellants own property in the Town of Monkton, the record shows that Appellants reside in the neighboring town of Ferrisburgh.  Regardless, however, of whether an interest in property in a town is sufficient to create a particularized interest under Criterion 10, Appellants fail to demonstrate a reasonable possibility of harm to any particularized interest of theirs under Criterion 10.

Standing requires that Appellants articulate how the kennel would lead to nonconformity with the Town Plan, and not merely reference to provisions from the Town Plan itself.  See In re Northeast Materials Grp LLC, Amended Permit, No. 35-3-13 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Aug. 21, 2013) (Walsh, J.).  Appellants fail to sufficiently allege a link between the kennel and the three provisions of the Town Plan with which, they contend, Ms. Orlandi's kennel conflicts.

Appellants cite to three provision in the Town Plan which they allege the project does not conform to, §§ 2.7, 2.7a, and 3.4.  First, § 2.7 states the goal "[t]o encourage commercial, light industrial and home occupation uses that are compatible with the rural character of the town without creating a negative fiscal impact."  Although § 2.7 specifically encourages commercial development and home occupation uses that are compatible with the rural character of the town, Appellants fail to allege with any specificity how Ms. Orlandi's kennel is incompatible with the rural character of the town.

11

Similarly, § 2.7(a) instructs that these uses "be compatible with the town's goals of preserving significant environmental features, conserving energy and minimizing adverse impacts on the environmental as a whole." Appellants fail to allege how the kennel is incompatible with the Town goals of minimizing adverse impacts on or preserving the environment as a whole, how the kennel will affect their or anyone else's interests, the presence of significant environmental features in the area surrounding the kennel, or even Ms. Orlandi's violation of any health and environmental conservation department regulations. Appellants have instead focused on speculation regarding the capacity of Ms. Orlandi's wastewater system and runoff into water resources that may or may not exist in the vicinity of the project.

Finally, § 3.4 encourages "use of Best Management Practices to protect water quality and the use of state funds or tax credits to help reduce costs to the farmer." This provision relates specifically to agricultural activity. Appellants again fail to demonstrate how this applies to Ms. Orlandi's kennel. Ms. Orlandi is not a farmer and Appellants have offered no evidence to suggest that the kennel is noncompliant with this provision.

"[I]t is not enough to merely quote from a municipal plan; to have standing, a litigant must articulate a causal link between a decision on a proposed project and a reasonable possibility of harm to the litigant's particularized interests." In re Northeast Materials Grp LLC, Amended Permit, No. 35-3-13 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Aug. 21, 2013) (Walsh, J.) (citation omitted). Appellants have failed to allege how the kennel fails to conform to these goals and have thus failed to demonstrate a reasonable possibility of any injury from the kennel's alleged nonconformity with the Town Plan.[3] For this reason, we conclude that Appellants are not entitled to party status under Criterion 10 and **DISMISS** Question 10 of Appellants' Statement of Questions relating to Act 250 Criterion 10.

---

[3] Addressing Ms. Orlandi's argument, even if Appellants have a particularized under Criterion 10, and had sufficiently alleged a reasonable possibility that the project may impact that interest, the project could not be denied based on the plan provisions cited by Appellants. A determination of nonconformity with a town plan requires that the plan provisions be mandatory and not aspirational and must be "a 'specific policy' set forth in the plan . . . stated in language that 'is clear and unqualified, and creates no ambiguity.'" In re John A. Russell Corp., 2003 VT 93, ¶ 16, 176 Vt. 520 (quoting In re Green Peak Estates, 154 Vt. 363, 369 (1990); In re MLB Assocs., 166 Vt. 606, 607 (1997) (mem.) (internal citations omitted)); In re Rivers Dev., LLC, Nos. 7-1-05 Vtec and 68-3-07 Vtec, slip op. at 9 (Vt. Envtl. Ct. Jan. 8, 2008) (Durkin, J.). The goals cited to by Appellants do not meet this standard; they are important general and aspiration goals, but they do not establish any specific regulatory policy in clear unqualified language.

## Conclusion

As stated above, we find that Appellants have either failed to assert a particularized interest protected by the Criteria that they cite, or they have failed to demonstrate a reasonable possibility that Ms. Orlandi's kennel will affect their interest. For these reasons, we **DENY** Appellants' motion for party status under Criteria 1, 1(A), 5, 8, and 8(A) and **GRANT** Ms. Orlandi's motion and **DISMISS** Appellants' Questions 1-9. Furthermore, we find that Appellants have failed to demonstrate a causal connection between the kennel and the provisions of the Town Plan with which they contend the kennel conflicts. For this reason, we find that Appellants lack standing under Criterion 10 and **GRANT** Ms. Orlandi's motion and **DISMISS** Appellants' Question 10. Finally, as Appellants do not have standing in this appeal, Question 11, which asks whether conditions should be imposed if the Project is approved, is also **DISMISSED**.

This concludes the matter before the Court. A Judgment Order therefore accompanies this Decision.

Electronically signed on February 13, 2015 at Newfane, Vermont pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

13