STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| --- | --- |
| | Docket No. 123-10-16 Vtec |

| Champlain Parkway Wetland CU Determination (Time Extension) (CUD No. 2010-125.01) | DECISION ON MOTION |
| --- | --- |

**Decision on Motion to Dismiss, Motion to File a Sur-reply, and Motion to Strike**

This is an appeal by Fortieth Burlington, LLC ("Fortieth") from a September 8, 2016 decision by the Agency of Natural Resources ("ANR"), granting the City of Burlington's ("the City") application for a time extension of a 2011 wetlands Conditional Use Determination for the construction of a roadway and path in Burlington.

The matter is now before us on the City's motions to dismiss and motion for summary judgment; Fortieth's motion to file a sur-reply memorandum; and the City's motion to strike Fortieth's proposed sur-reply.

The City is represented by Jonathan T. Rose, Esq. and Fortieth is represented by Judith L. Dillon, Esq.

## Background and Procedural History

On January 14, 2011, the Water Quality Division, Department of Environmental Conservation, Agency of Natural Resources (collectively "ANR"), issued Conditional Use Determination # 2010-125 ("the 2011 CUD") pursuant to the Vermont Wetlands Rules to the City for the construction of the Champlain Parkway, a roadway and mixed-use path running through Burlington ("the project").

The 2011 CUD deals with impacts to a Class II wetland and buffer zone along Englesby Brook.[1]

---

[1] The parties indicate that this wetland is also referred to as "Wetland H/I." The CUD states that the "subject wetland" of the CUD is "on the west side of Pine Street in Burlington, Vermont" and "is a 13-acre wetland complex in a ravine along Englesby Brook." 2011 CUD Findings of Fact 2, 5. The 2011 CUD does not mention "Wetland H/I," except in noting that "[t]he applicant has submitted a complete application including the following: Champlain

On September 29, 2015, the City applied for a time extension to the 2011 CUD, which ANR granted on September 8, 2016 ("the CUD time extension") for a period of five additional years (i.e., until September 8, 2021).

Fortieth appealed the CUD time extension on October 7, 2016 to this Court and then timely filed a Statement of Questions consisting of twelve questions.

On December 16, 2016, the City filed a motion to dismiss, arguing that Fortieth does not have standing to bring the appeal. In the alternative, the City asked the Court to dismiss Questions 1–4, 6, and 8–12, and dismiss or clarify Question 7.

At a December 19, 2016 status conference, the Court determined that the part of the City's motion to dismiss that addressed standing would be treated as a motion for summary judgment. The Court instructed the City to file a statement of undisputed material facts to support the motion. The City filed its statement of material facts on January 6, 2017, accompanied by an affidavit by John "Jack" T. Myers and two maps of the project area. On January 31, 2017, the City filed an unopposed motion to amend its statement of undisputed material facts, along with an amended statement of undisputed material facts and affidavit by Jack Myers. We subsequently granted the motion to amend.

Fortieth filed its opposition to the motion to dismiss its questions, and motion for summary judgment challenging standing, on February 3, 2017. Attached to Fortieth's opposition are a response to the City's statement of undisputed material facts, an affidavit by Gaylord "Chip" Myers, and eight exhibits.

The City filed a reply memorandum on February 17, 2017, in which it withdrew its challenge to Fortieth's standing, without prejudice to again contest Fortieth's standing, and, in a footnote, argued that Question 5 should also be dismissed. City's Reply at 5 n.5.

Fortieth filed a sur-reply and motion to file a sur-reply on February 28, 2017, and the City filed a memorandum in opposition to the motion to file a sur-reply, along with a motion to strike the proposed sur-reply, on March 7, 2017.

---

Parkway Natural Resources Map; Wetland H/I impacts detail figure; Wetland Data Sheets and Functional Assessment; Wetland H/I photographs." Id. 7.

## Discussion

### I. Motion for Summary Judgement Challenging Fortieth's Standing

In its notice of appeal, Fortieth claims standing pursuant to 10 V.S.A. § 8504(a). That statute provides standing to "any person aggrieved by an act or decision of the Secretary [of ANR] . . . under the provisions of law listed in" section 8503 of Title 10. 10 V.S.A. § 8504(a). ANR issued the CUD and CUD time extension pursuant to Title 10, Chapter 37, which is a provision of law listed at § 8503(a)(1)(O).

Under our court rules, "[a]n appellant who claims party status as a person aggrieved pursuant to . . . 10 V.S.A. § 8504(a) . . . will be automatically accorded that status when the notice of appeal is filed unless the court otherwise determines on motion to dismiss a party." V.R.E.C.P. 5(d)(2). Fortieth therefore automatically had party status from the time it asserted a right to appeal under § 8504(a). The City challenged that status. However, in its February 17, 2017 reply memorandum, the City withdrew its challenge to Fortieth's standing while reserving the right to raise a similar challenge at a later time.

We note that standing, as a component of subject matter jurisdiction can normally be challenged at any time. Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235. In appeals to the Environmental Division, however, a challenge to standing may be waived if not explicitly preserved. In re Carrigan Conditional Use & Certificate of Compliance, 2014 VT 125, ¶ 12, 198 Vt. 438; In re Denio, 158 Vt. 230, 235–36 (1992).

By filing its motion to dismiss / motion for summary judgment, and by withdrawing that motion only with the express reservation that the same challenge may be raised in the future, we conclude that the City has preserved its right to raise a challenge to Fortieth's standing at a later date. Because the City has withdrawn its standing challenge, for the time being, we need not address that legal issue at this time.

### II. Motion to File a Sur-Reply and Motion to Strike Proposed Sur-Reply

In its motion to file a sur-reply, Fortieth argues that the City, in its reply memorandum, abandoned its standing challenge and replaces it with a new theory for dismissing Fortieth's appeal, and that the City raises a laches argument for the first time to which Fortieth should be allowed to respond.

3

A party does not normally have a right to file a sur-reply.  V.R.C.P. 78(b)(1).  However, when new issues are raised in a reply, the opposing party may be entitled to file a sur-reply.  Meulrath v. Fisher, No. 3-1-07 Wmcv, n.3 (Vt. Super. Ct. Jul. 16, 2008); Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003).  Given these procedural circumstances, we believe that Fortieth should be allowed to file its Sur-Reply and have it considered by this Court.

Because the City's laches argument and its request to dismiss Question 5 were only presented in its reply, we conclude that Fortieth had a right to file a sur-reply.  We therefore **GRANT** Fortieth's motion to file a sur-reply, and **DENY** the City's motion to strike the sur-reply.

### III.     Motion to Dismiss and / or Limit Statement of Questions

The City initially moved to dismiss Questions 1–4, 6, and 8–12, and to either dismiss or clarify Question 7.  In its reply memorandum, the City argued that Question 5 should also be dismissed.

#### a.  Whether questions 1, 2, 5, 6, 8, 9, and 10 should be dismissed because they attempt to collaterally attack a prior, final permit decision

The City argues that these questions should be dismissed because they challenge issues addressed in the 2011 CUD, which was not appealed and is final.  Fortieth responds that the extension approval would change the original project to such a degree that the entire CUD should be reviewed.

The City's argument regarding these Questions comes before us in the form of a motion to dismiss.[2]  Motions to dismiss "must satisfy an exceptional legal standard."  In re G & D, LLC Permit Application, No. 125-9-13 Vtec slip op. at 1 (Vt. Super. Ct. Envtl. Div. Nov. 7, 2013) (Walsh, J.).  When considering such a motion, we "assume as true all facts as pleaded [by the nonmoving party], accept as true all reasonable inference[s] derived therefrom, and assume as false all contravening assertions in the [moving party's] pleadings."  Kuligoski v. Brattleboro Retreat, 2016

---

[2] The parties have included affidavits and exhibits in their pleadings.  In some cases, when the parties present support for factual allegations and the court accepts that support, a 12(b)(6) motion may be converted to a motion for summary judgment.  V.R.C.P. 12(b); In re Bibby 5-Lot Final Plat Subdivision & Waiver Application; No. 189-11-10 Vtec slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Mar. 2, 2012) (Durkin, J.).  Here, the supporting materials do not address the set of questions in this subsection, and we therefore analyze the motion as a motion to dismiss.

VT 54A, ¶ 18 (Sept. 16, 2016) (citing Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420).[3] At the same time, we "are not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the non-moving party." Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 14, 200 Vt. 465 (quoting Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 137 (2d Cir.2004)).

Before addressing the specific questions being challenged, we believe it useful to frame the issue with a discussion of general principles regarding finality in land use decisions, and how those principles apply in this case.

### i. Whether the CUD is akin to a final permit decision that may not generally be challenged in a subsequent proceeding.

It is well established that where a land use permit decision has become final—either by a failure to appeal, or by appeal to and decision by a higher court—a party cannot later collaterally attack that final decision through a separate proceeding. Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989). This principal, which we have at times referred to as the "finality rule" or as a bar on collateral attacks, is premised on the importance of finality in land use determinations. In re: Simpson Development Corporation, No. 54-3-05 Vtec, slip op. at 3–4 (Vt. Envtl. Ct. Jun. 27, 2006) (Durkin, J.).

This rule applies to municipal zoning permits through a statute that specifically bars collateral attacks to final permit decisions. 24 V.S.A. § 4472(d); In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶¶ 54–55, 199 Vt. 19. For example, in In re Musty Permit the Supreme Court held that a final municipal subdivision permit cannot be collaterally attacked in a subsequent challenge to a permit to construct a single-family dwelling on one of the subdivided lots. 2012 VT 42, ¶¶ 5–6, 191 Vt. 483; see also Village of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993) (holding that in an appeal from a municipal panel's denial of an application for permit

---

[3] Although the Civil Rule directs a court to look no further than the complaint when reviewing a motion to dismiss, we take a slightly modified approach. This is because an appellant in a permit appeal such as this files a statement of questions, rather than a complaint. For this reason, it is our practice when considering motions to dismiss to "assume that all factual allegations made by the non-moving party are true and that all contravening assertions made by the moving party are false," without specifically being limited to a complaint. In re G & D, LLC Permit Application, No. 125-9-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Nov. 7, 2013) (Walsh, J.) (citing Richards v. Town of Norwich, 169 Vt. 44, 49 (1999)); Buchwald Home Occ. Cond. Use Permit, No. 181-12-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 1, 2014) (Walsh, J.).

amendments, parties could not challenge the underlying permit or other amendments that had been approved and had not been appealed).

The bar against collateral attacks also applies to Act 250 permit decisions. In re Taft Corners Assocs., Inc., 160 Vt. 583, 593 (1993); In re Route 103 Quarry, No. 205-10-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 22, 2006) (Durkin, J.), aff'd 2008 VT 88, 184 Vt. 283 ("A property owner who has received a land use permit authorizing development of their property is entitled to rely upon the vested rights that the unappealed permit secures, even when that property owner later submits a request to amend the permit."). In Taft Corners, the Court held that a final Act 250 "umbrella permit" establishing conditions for a development as a whole, and a final amendment to that umbrella permit, could not be challenged in a subsequent proceeding regarding a later Act 250 permit application for construction on a lot within that overall development. 160 Vt. at 593. The Court based this conclusion not on a statutory directive, as in the analogous municipal permits cases cited above, but rather on the fact that the umbrella permit and prior amendment had not been appealed and were therefore final, "whether or not they were properly granted in the first instance." Id. The Court explained that this conclusion was necessary to ensure "the orderly governance of development and . . . reasonable reliance on the process." Id. (citing Levy, 152 Vt. at 143).

The finality rule has also been applied to ANR permit decisions. In In re Unified Buddhist Church, Inc., the Supreme Court held that a final indirect discharge permit for a sewer system issued by ANR could not be challenged in a subsequent appeal from a decision approving an amendment to that permit. 2006 VT 50, ¶¶ 13–20, 180 Vt. 515 (mem.). The Court specifically held that this challenge was barred by the doctrine of claim preclusion. Id. ¶ 20. Similarly, the Water Resources Board held in In re Town of Shoreham Wastewater Treatment Facility that a party appealing an amendment to a municipal wastewater discharge permit could not also challenge the underlying permit or other, unappealed amendments to that permit. No. WQ–00–11, Mem. of Decision, at 7 (Vt. Water Res. Bd. May 2, 2001). In Shoreham, the Board explained that "a party may not litigate through a permit amendment proceeding a matter finally decided in a prior permit." Id. (citing Taft Corners, 160 Vt. at 593; Levy, 152 Vt. at 143; and Re: Appeal of

<u>Poultney River Committee</u>, No. WQ-92-04, Preliminary Order, at 2–4 (Vt. Water Res. Bd. Aug. 11, 1992), *aff'd* by <u>In re Poultney River Committee</u>, 163 Vt. 656 (No. 94-165, June 26, 1995) (mem.)).

In the case now before us, we are presented with an appeal from an ANR decision granting a time extension to an existing wetlands CUD (the 2011 CUD) issued by ANR. The 2011 CUD was an act or decision made by ANR pursuant to Title 10, ch. 37, which could have been appealed within 30 days pursuant to Title 10, ch. 220. When no appeal was made, the 2011 CUD became final. The CUD time extension, issued in 2016, changed no other provisions from the 2011 CUD, except for the deadline for the CUD approval. Since no other change was requested in the amendment application, and no new authority was issued in the 2016 CUD amendment, except for the time extension, the parties and this Court has no jurisdictional authority to entertain other legal issues, particularly those made final by the 2011 CUD determination.

The 2011 CUD and the CUD time extension are functionally akin to land use permits, as they authorize the City to construct a roadway and path through specific wetlands, provided the City complies with enumerated conditions. We therefore conclude that the finality rule discussed above generally applies to the final legal determinations announced in the 2011 CUD.

### ii. Whether the CUD extension entails a substantial or material change to the CUD, and whether such a change would warrant reconsideration of the 2011 CUD.

Fortieth contends that granting the extension would change the original project to such a degree that the entire CUD should be reviewed. This assertion is set out in part[4] in Question 5, which asks: "[w]hether the project or project impacts on Wetland H/I have changed or increased, thereby requiring a new individual wetland permit or major permit amendment, and review under the individual permit standards, Section 9.5 of the Vermont Wetland Rules."

Although the City did not initially move to dismiss Question 5, in its reply memorandum the City argues that this question should be dismissed because it is "not part of the decision being appealed." City's Reply at 5 n.5.

---

[4] In its pleadings Fortieth appears to assert both that the extension itself represents a substantial change that requires a comprehensive review; and that other changes to the project since the 2011 CUD, apart from the extension, represent substantial changes requiring a comprehensive review.

In some cases, the finality rule does not prevent a party from challenging an underlying, final permit if that party is challenging a decision that would substantially change the terms of the original permit. While we conclude that the finality rule applies to the CUD, it is not initially clear that this exception applies to the CUD and CUD time extension, and if so, to what extent. We therefore are required to conduct a further evaluation of the material facts represented by the parties, again with deference to the supported facts asserted on behalf of Fortieth.

In Taft Corners, the Supreme Court explained that under the Act 250 rules, "[i]f a proposed permit amendment involves substantial changes to a permitted project or permit, it shall be considered as a new application" requiring a full review under all Act 250 criteria. 160 Vt. at 592–93 (quoting Act 250 Rule 34(B)).

In Unified Buddhist, however, the Supreme Court rejected the idea that a substantial change to an ANR permit should be treated as requiring a new application. 2006 VT 50, ¶ 18. Specifically, appellants in that case argued that an amendment representing a "major revision" to the original, approved indirect discharge permit "requires a full new review of the system." Id. The Supreme Court disagreed, partly because the relevant Indirect Discharge Rules did not "require[] that a major revision be reviewed as a new indirect discharge." Id. ¶ 19.

From these cases, we conclude that a full review of an underlying permit is not required when an application to amend that permit is filed, unless the relevant rules or other legal authority call for such a review.

Fortieth cites no rule or other legal authority that would require a full review of a wetlands conditional use determination when an amendment application is filed, nor are we aware of any such rule. See generally 10 V.S.A. ch. 37; Vermont Wetlands Rules, 16-5 Vt. Code R. § 103.[5]

Fortieth points to condition A in the "Decision" section of the CUD extension to support the idea that a substantial or material modification to the CUD requires a more thorough review of the proposed project. Fortieth's Opp. at 8. However, condition A simply states that "[n]o material or substantial changes shall be made in the project without the written approval of the Vermont Wetlands Office." Condition A does not state that a material or substantial change

---

[5] The Vermont Wetland Rules were amended January 26, 2017, effective April 1, 2017, and are available at http://dec.vermont.gov/sites/dec/files/documents/wsmd_Vermont_Wetland_Rules_2017.pdf.

triggers a review of the entire project, and, on the plain language, we decline to read a comprehensive review into this condition. There is nothing in this condition to the effect that the entire project should be reviewed or, as in Taft Corners, that a substantial change should be considered as a new application. For this reason, we disagree with Fortieth's assertion that a substantial or material change to the CUD would allow, let alone require, a review of matters determined in the 2011 CUD.

Furthermore, our reading of the 2011 CUD is that condition D applies to extension requests, and condition A does not. When interpreting permit terms, we "strive to implement the intent of the draftspersons," looking first to the "plain meaning of words because we presume they show the underlying intent." Sec'y, Vermont Agency of Nat. Res. v. Handy Family Enterprises, 163 Vt. 476, 481 (1995) (citation omitted). Condition D of the 2011 CUD states that "[a] request for extension will be considered a minor modification." Condition A states that "[n]o material or substantial changes shall be made in the project without the written approval of the Vermont Wetlands Office." Looking to the plain language of these terms, condition D defines a time extension request as a minor modification, putting it outside of the review and approval process required under condition A. In other words, condition D applies to a time extension request, while condition A applies to material or substantial changes, and does not apply to a time extension request.

If, as Fortieth asserts, changes to the project's impervious surface area represent a substantial or material change, those changes would require written approval pursuant to condition A. That would be a matter separate and apart from the written approval required for a permit extension, which is approved or denied pursuant to condition D. In fact, the CUD time extension only authorizes an extension of the permit timeline; the CUD time extension, and the application for it, does not speak to a revision, substantial or not, to the plans upon which the original CUD and its extension have been based.[6]

---

[6] Fortieth appears to base its assertion that there has been a real and substantial change since the 2011 CUD upon changes that the City disclosed in its stormwater treatment systems. These changes were revealed in 2012 when the City applied for and received an amendment to its operational stormwater permit. No appeal was taken, by Fortieth or any other interested party, from the 2012 stormwater permit amendment; that determination is therefore final and may not be challenged in this proceeding.

Because Question 5 seeks to raise issues properly addressed under condition A, and those issues are separate and apart from an extension request, which is addressed under condition D, we conclude that Question 5 cannot be raised in this appeal. For this reason, Question 5 is **DISMISSED**.

### iii. Whether questions 1, 2, 6, 8, 9, and 10 should be dismissed

Question 1 asks "[w]hether the project will result in an undue adverse impact to protected functions and values of the significant wetland H/I, or wetland buffer, and fails to comply with the Vermont Wetland Rules?" Question 2 asks "[w]hether the project complies with Vermont's Wetland Statute, 10 V.S.A. sec. 913?" Question 6 asks "[w]hether the project and permit extension request fails to qualify as a minor permit amendment?" Question 8 asks "[w]hether the wrong version of the Vermont Wetland Rules was applied to the original application, and whether and how that error impacts the extension request?" Question 9 asks "[w]hether the project complies with mitigation sequencing under 9.5(B) of the Vermont Wetlands Rules?" Question 10 asks "[w]hether reliance on anticipated stormwater improvements or benefits arising from the project to the watershed generally can render the adverse impacts to the water storage and stormwater functions of Wetland H/I not undue?"

We agree with the City that Questions 1, 2, 9, and 10 seek to challenge the 2011 CUD and, as such, are impermissible here. Question 8 also seeks to challenge the 2011 CUD, albeit with an attempt to tie in the extension request. Under the principle that a final land use decision may not be collaterally attacked, even if that decision was made in error, we conclude that Question 8 is also impermissible. City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 589 (2000).

Question 6 raises the question of whether it is permissible to allow the permit extension to be a minor modification. Condition D of the 2011 CUD explains that the City can apply for an extension to the five-year time period of the 2011 CUD, and that such an extension request will be considered a "minor modification."[7] Question 6 therefore appears to challenge the determination in the original permit that future extension requests shall be treated as minor

---

[7] The 2010 Wetland Rules say nothing about minor modifications or amendments. While the 2017 Wetland Rules do address minor amendments at Rule 9.7(2), these rules were not in place at the time that the extension request was submitted and therefore do not apply. In re B & M Realty, LLC, 2016 VT 114, ¶ 22 (Vt. Oct. 21, 2016).

modifications. Again, this is impermissible because it would challenge something determined and finalized in the 2011 CUD.

For these reasons, the City's motion to dismiss Questions 1, 2, 6, 8, 9, and 10 is **GRANTED**.

### b. Whether Questions 3 and 4 should be dismissed because the 2011 CUD did not require a wetlands re-delineation as a precondition for submitting or approving an extension request

Questions 3 and 4 raise the question of whether the City was required to re-evaluate[8] the current delineation of the boundary of Wetland H/I or re-delineate that boundary prior to applying for a CUD extension; and provide an updated Champlain Parkway Natural Resource map, Wetland H/I impacts detail figure, wetland data sheets and functional assessment, and Wetland H/I photographs with its CUD extension request.

Condition D and E of the 2011 CUD addressed the extension question as follows:

D. All construction activities in the wetland and adjacent 50-foot buffer zone shall be performed in compliance with Condition A and shall be completed within five years of the date of this [CUD] or this [CUD] will terminate. The Secretary may grant an extension to this five-year period. Any request for an extension must be received by the Department at least 30 days prior to the end of the five-year period in order to prevent the termination of this [CUD]. A request for extension will be considered a minor modification.

E. The wetland boundary determination is valid for five years from the date of this determination. The delineation will need to be re-evaluated by a qualified wetland consultant if the project is not constructed, or additional impacts are proposed, after the five-year time period expires.

The parties have asserted some facts related to Questions 3 and 4 supported by a number of exhibits. If we were to accept supplementary material, V.R.C.P. 12(c) would require us to consider the City's motion under a Rule 56 standard. In re: Feeley Construction Permits, Nos 4-1-10 Vtec and 5-1-10 Vtec, slip op. at 1 (Vt. Envtl. Ct. Jun. 16, 2010) (Wright, J.). On the other hand, if the supplementary materials are insufficient to fully address the issue, we do not take them into account, and we consider the motion as a motion to dismiss. In re: Chipman Hill Estates PUD, No. 39-2-06 Vtec, slip op. at 3 (Vt. Envtl. Ct. May 15, 2006) (Durkin, J.). Here, because the

---

[8] Fortieth initially asserted that Condition E required a "re-determination and re-evaluation" of the applicable wetlands determinations. As detailed below, the plain language of Condition E does not require a re-determination of the applicable wetlands determinations.

11

materials offered do not appear to be materially germane to the legal issues before us, we decline to consider them or to consider the motion under Rule 56.

As explained above, when interpreting permit terms, we look first to the plain language of the permit to determine the intent of the drafters. <u>Handy Family Enterprises</u>, 163 Vt. at 481.

Condition D requires a time extension request to be submitted at least 30 days prior to the end of the five-year period. Condition E requires a re-evaluation of the delineation "after the five-year time period expires." On the plain language, these conditions do not require a re-delineation, but rather a re-evaluation of the prior delineation. In addition, the conditions say nothing about a re-delineation (or re-evaluation of the prior delineation) being a precondition to an extension request being filed. In fact, because the re-evaluation is to be done after the five-year period expires, and a permit extension request is to be submitted at least 30 days before the five-year period expires, it would take some interpretive gymnastics to conclude that the re-evaluation is a pre-condition to an extension being granted. A plain-language reading of the 2011 CUD does not require a re-delineation or re-evaluation as a precondition to applying for or being granted an extension. We decline to adopt the interpretive gymnastics that Fortieth proposes.

Even if there was some ambiguity regarding whether a re-delineation or re-evaluation is a precondition to an extension—which we do not believe is the case—we would be compelled to resolve that ambiguity in favor of the City, in which case we would reach the same conclusion. <u>Id</u>. at 484.

In addition, it is worth noting that while Condition D states that an extension request will be considered a minor modification, we have no specific guidance regarding what such a modification entails. The 2011 CUD is silent on the matter, and does not address treatment of non-minor modifications. As noted above, the 2010 Wetland Rules say nothing about minor modifications or amendments. Therefore, we conclude that what constitutes a "complete application" for a time extension is governed by the plain language of the 2011 CUD: that the time extension request (1) must be made no less than 30 days prior to the original expiration date; (2) that it may only be granted for an additional five-year period; and (3) that such a request shall be treated as a minor modification. <u>Id</u>.

While the 2017 Wetland Rules do address minor amendments at Rule 9.7(2), these rules were not in place at the time that the extension request was submitted and therefore do not apply. In re B & M Realty, LLC, 2016 VT 114, ¶ 22 (Vt. Oct. 21, 2016). In short, nothing in the term "minor modification" indicates whether or not such a modification should include a re-evaluation of the wetland boundary lines.

For all these reasons, we conclude that the City's motion to dismiss Questions 3 and 4 must be **GRANTED**.

### c. Whether Questions 11 and 12 should be dismissed because ANR did not issue a final order on Wetlands J, K, and L, and Fortieth failed to exhaust its administrative remedies

Question 11 asks "[w]hether the functions and values of wetlands J, K, and N, are significant and require a wetland permit prior to impacts to those wetlands," and Question 12 asks "[w]hether the project will result in an undue adverse impact to Wetlands J, K, and N."

Here, again, the parties have asserted some facts related to Questions 11 and 12 supported by a number of exhibits. As explained above, if we were to accept and take supplementary material into consideration, the City's motion to dismiss on these questions would be converted to a Rule 56 motion. Again, because it appears that the factual support offered are not germane to the legal issues we must address, we decline to consider exhibits or affidavits in relation to this issue, and we will review the issue as a motion to dismiss.

In its opposition to the City's motion to dismiss, Fortieth asks leave to amend these questions by replacing Wetlands J, K, and N with Wetland P. Fortieth's Opp. at 13. Fortieth states that it "will withdraw its questions 11 and 12 as it relates to Wetland J, K, and N." Id. Fortieth makes no further argument that these questions should be withdrawn or dismissed, even in the event that we deny its motion to amend and add the new Questions 11 and 12 that would address Wetland P. We therefore treat the requests to (1) withdraw questions regarding Wetlands J, K, and N, and (2) amend the Statement of Questions to add questions related to Wetland P, as two separate requests.

To the first request, pursuant to V.R.E.C.P. 2(d)(2) and 5(d), which allow us to narrow and clarify a party's statement of questions, Fortieth's request to withdraw Questions 11 and 12 as they relate to Wetlands J, K, and N is **GRANTED**.

To the second request, Fortieth contends that Wetland P is located close to, and is hydrologically connected to, Wetland H/I. Fortieth's Opp. at 3. Although not yet classified, Fortieth submits that Wetland P is likely to be re-classified as a significant or Class II wetland. Fortieth asserts that Wetland P was only recently discovered, but that it would have been discovered sooner if the City had carried out a re-delineation effort prior to applying for the CUD extension. Because of the asserted connection between Wetland P and Wetland H/I, Fortieth argues that the discovery of Wetland P requires a more comprehensive review of the Wetland H/I CUD extension request.

Fortieth's request to add questions related to Wetland P again raises the issue of re-delineating the boundaries of the wetland covered by the 2011 CUD and extension. Fortieth asserts that the extension request should be contingent on a re-delineation, and that a re-delineation would extend the boundary to include Wetland P. Furthermore, Fortieth premises its argument here on the bold assertion that Wetlands P will be reclassified as a significant, Class II wetland. We decline to adopt Fortieth's assumptions on this point. More to the legal issues before us, the application on appeal is not the proper proceeding for Fortieth to apply for a reclassification of any wetland.

As explained above, the 2011 CUD does not require a re-delineation or re-evaluation of the wetland prior to granting an extension request. Rather, the CUD allows for a time extension to be granted, under condition D. Then a re-evaluation of the wetland delineation is required under condition E. If the re-evaluation shows that the project might potentially impact Wetland P, the boundary could presumably be re-delineated to encompass that wetland. Implicit in the requirement for a re-evaluation of the wetland delineation after five years is the assumption that the delineation is subject to change. See also 2011 CUD, Decision ¶ 2 (stating that ANR maintains continuing jurisdiction over the project). Regardless, focusing on the matter before us, we conclude that issues related to Wetland P are not germane to this appeal because a boundary evaluation is not a pre-condition for a time extension.

Furthermore, we conclude that issues related to Wetland P are not relevant to the extension request in any other way. Fortieth appears to present a more general argument that the discovery of a previously unknown wetland in the path of the project should be taken into

14

consideration. While this may be true, it is unclear why a potential impact to Wetland P should be considered in a request that solely asks for a time extension of the 2011 CUD.

Because proposed Questions 11 and 12 are not relevant to whether the CUD time extension should have been granted, the addition of these questions would be futile insofar as "it appears beyond doubt that there exist no facts or circumstances that would entitle Appellant to relief" on these questions. In Re Werner Conditional Use, No. 44-4-16 Vtec, slip op at (Vt. Super. Ct. Envtl. Div. Jul. 13, 2016) (Durkin, J.) (quoting In re Wagner and Guay Permit, No. 150-10-14 Vtec at 1-2. (Vt. Envtl. Ct. Envtl. Div. April 2, 2015) (Walsh, J.)). For this reason, Fortieth's request to add proposed Questions 11 and 12 to address concerns over Wetland P is **DENIED**.

### d. Whether Question 7 should be dismissed or clarified because it is over broad

Question 7 asks "[w]hether a CUD extension request should have been granted."

Our court rules allow a party to move for clarification of a Statement of Questions. V.R.E.C.P. 2(d)(2) and 5(f).

A Statement of Questions "functions as a cross between a complaint filed before the Civil Division and a statement of issues filed before the Vermont Supreme Court." In re Conlon CU Permit, No. 2-1-12 Vtec, slip op at 1 (Vt. Super. Ct Envtl. Div. May 10, 2012) (Durkin, J.) (citation omitted). Like a civil complaint, it puts other parties on notice of the issues to be decided during litigation; like a supreme court appeal, it also limits the scope of issues to be addressed. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.) (citations omitted). We have explained that "[t]he other parties are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial." In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. May 11, 2007) (Wright, J.).

Here, Fortieth's Question 7 is extremely broad, and does not give the City any notice of what aspects of the CUD time extension request are being challenged. In its Opposition, Fortieth gives examples of specific decisions or findings that Question 7 seeks to challenge. By doing so, Fortieth effectively concedes that Question 7 is overly broad in that it fails to give notice as to what issues are at stake. For these reasons, we agree with the City. The City's motion to clarify

is therefore **GRANTED**, and Fortieth is ordered to clarify Question 7 within twenty days from the date of this Decision.

## Order

1. The City's request to withdraw its motion for summary judgement challenging Fortieth's standing is **GRANTED,** without prejudice to raise its standing challenge at a later date.

2. Fortieth's motion to file a sur-reply is **GRANTED**, and the City's motion to strike the sur-reply is **DENIED**.

3. The City's motion to dismiss Questions 1, 2, 3, 4, 5, 6, 8, 9, and 10 is **GRANTED.**

4. Fortieth's request to withdraw Questions 11 and 12 as they relate to Wetlands J, K, and N is **GRANTED**.  Fortieth's request to amend Questions 11 and 12 to relate those questions to Wetland P is **DENIED**.

5. The City's motion to clarify Question 7 is **GRANTED** and Fortieth is ordered to submit its clarification of Question 7 **no later than Friday, May 5, 2017**.


Electronically signed on April 14, 2017 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division